Belknap
No. 2005-737

TOWNSEND D. THORNDIKE

v.

CHARLES E. THORNDIKE

Argued: September 13, 2006
Opinion Issued: November 30, 2006

*Wiggin & Nourie, P.A.*, of Manchester (*W. Wright Danenbarger* on the brief), and *Lyne, Woodworth & Evarts, LLP*, of Boston, Massachusetts (*Edmund Polubinski, Jr.*, on the brief and orally), for the petitioner.

*Gallagher, Callahan & Gartrell, P.A.*, of Concord (*Michael R.Callahan* and *Thomas J. Schlesinger* on the brief, and *Mr. Callahan* orally), for the respondent.

GALWAY, J. The petitioner, Townsend D. Thorndike, appeals an order of the Superior Court (*Perkins*, J.) ruling that the statute of limitations barred his petition for equitable relief and damages. We affirm.

Because the petitioner appeals a motion to dismiss, we assume the truth of the following facts asserted by the petitioner. The petitioner and the respondent, Charles E. Thorndike, are brothers and shareholders in a corporation known as Annalee Mobilitee Dolls, Inc. (AMD), which produces and sells collectible dolls. The business was started by the brothers' parents in 1951, and the brothers began working at AMD in the early 1970s. From the early 1970s to the 1990s, the major business decisions for AMD were made unanimously by all Thorndike family members. In 1992, the parents gave 48 percent of the business's voting stock to the petitioner and 48 percent to the respondent, leaving 2 percent to each parent. At this time, the family agreed that all four family members would be directors of AMD. In 1995, the parents gave day-to-day control of the business to the respondent, but it was agreed upon by all shareholders and directors that the petitioner would retain a directorship and a significant management position. The shareholders and directors further agreed that the brothers would continue to share equally in the income from the business.

The petitioner alleges that, after the respondent gained control of day-to-day operations, he and his parents added people who were neither shareholders nor Thorndike family members to AMD's board of directors. The parents also transferred their voting stock to a voting trust under the control of one of the new board members. The respondent and the new board members then removed the petitioner from his position as a director and from any management role in AMD. The respondent reduced the salaries of his parents and the petitioner to zero, due to losses suffered by the company, but continued to pay himself and the outside directors. The losses that began after the petitioner's removal from management totaled in the millions of dollars. In 1997, AMD's financing bank terminated AMD's line of credit and demanded full repayment of loans. In response to these losses, the respondent invested some of his own money into AMD. In exchange, he and the new board members caused AMD to issue convertible notes to the respondent, which were convertible to voting stock

and would, if converted, increase the respondent's voting power and decrease the petitioner's.

The petitioner alleges that, prior to February 18, 2002, the respondent: (1) converted the convertible notes to voting stock, thus diluting the petitioner's voting power; (2) denied the petitioner information regarding AMD's operations; (3) continued to pay himself a salary and not pay the petitioner a salary; (4) refused to allow the petitioner to participate in the business; and (5) banned the petitioner from AMD's premises and prohibited contact between the petitioner and AMD employees.

The petitioner alleges that, after February 18, 2002, the respondent: (1) continued to exclude the petitioner from employment with AMD; (2) refused to provide the petitioner with copies of AMD's tax returns; (3) continued to pay himself a salary and not pay the petitioner; (4) continued to refuse to allow the petitioner to participate in AMD's operations; (5) continued to ban the petitioner from AMD's premises; (6) failed to hold the 2004 AMD shareholders' meeting; and (7) caused AMD to fail to pay rent to C&T Partnership, a real estate partnership owned by the petitioner and the respondent that leases real estate to AMD.

Based upon the above events, the petitioner filed a petition for equitable relief and damages on February 18, 2005. The petitioner alleged that, as the controlling shareholder of a closely-held corporation, the respondent breached his enhanced fiduciary duty to the petitioner, a minority shareholder, by defeating the petitioner's reasonable expectations and freezing him out from AMD. The respondent moved to dismiss the petition, arguing that the petition was barred by the statute of limitations. The trial court granted the motion to dismiss, concluding that the petitioner's claims all arose from facts that occurred and were known to the petitioner more than three years prior to the filing of the petition on February 18, 2005.

On appeal, the petitioner argues that the trial court erred in granting the motion to dismiss because the events that occurred before and after February 18, 2002, were all part of a plan to freeze-out the petitioner from AMD, and thus constituted a continuing tort. Because corporate freeze-out is a continuing tort, the petitioner argues, all of the breaches of fiduciary duty that the respondent committed are actionable as one tort. The petitioner argues in the alternative that, even if the statute of limitations bars an action based upon events occurring before February 18, 2002, the events occurring after that date are actionable as independent torts. The respondent argues that the trial court correctly ruled that the petitioner's claim is barred by the three-year statute of limitations imposed upon personal actions. *See* RSA 508:4, I (1997).

In reviewing a trial court's ruling on a motion to dismiss, we consider whether or not the petitioner's allegations are reasonably susceptible of a construction that would permit recovery. *Cadle Co. v. Dejadon*, 153 N.H. 376, 378 (2006). Although we assume the truth of the facts alleged in the petitioner's pleadings and construe all reasonable inferences in the light most favorable to him, we will uphold the granting of the motion to dismiss if the facts pled do not constitute a basis for legal relief. *Perez v. Pike Inds.*, 153 N.H. 158, 159-60 (2005).

We have never explicitly adopted the tort of corporate freeze-out, although we have assumed its existence *arguendo*. *Kennedy v. Titcomb*, 131 N.H. 399, 403 (1989). For the purposes of our discussion below, we will assume without deciding that the tort of corporate freeze-out exists in New Hampshire. We now address the petitioner's claim that the tort of corporate freeze-out is a continuing tort.

When a tort is of a continuing nature, "although the initial tortious act may have occurred longer than the statutory period prior to the filing of an action, an action will not be barred if it can be based upon the continuance of that tort within that period." *Nordic Inn Condo. Owners' Assoc. v. Ventullo*, 151 N.H. 571, 581 (2004). This is known as the "continuing wrong" doctrine. *Id.* at 581-82. Courts have traditionally applied this doctrine to the torts of trespass and nuisance, *John Beaudette, Inc. v. Sentry Ins.*, 94 F. Supp. 2d 77, 107 (D. Mass. 1999) (summarizing the law of continuing wrong in Massachusetts as limited to actions in nuisance and trespass); *Jacques v. Pioneer Plastics, Inc.*, 676 A.2d 504, 506 (Me. 1996) (stating that Maine has long recognized claims for continuing trespass and continuing nuisance), although some courts have applied the doctrine to other areas of tort law, such as civil rights, property damage, and antitrust. *See Blazer Foods v. Restaurant Properties*, 673 N.W.2d 805, 810 (Mich. Ct. App. 2003) (summarizing the Michigan Supreme Court's use of the continuing wrong doctrine as limited to actions in trespass, nuisance, and civil rights violations); *Wenigar v. Johnson*, 712 N.W.2d 190, 209 (Minn. Ct. App. 2006) (stating that the continuing wrong doctrine is most commonly applied in Minnesota to discrimination cases involving wrongful acts that take place over a period of time); *Holland v. City of Geddes*, 610 N.W.2d 816, 818 (S.D. 2000) (applying the continuing wrong doctrine to repeated water damage caused by a city's failure to fix a malfunctioning water line); *DXS, Inc. v. Siemens Medical Systems, Inc.*, 100 F.3d 462, 467 (6th Cir. 1996) (describing a continuing antitrust violation as a violation in which the plaintiff's interests are repeatedly invaded and requiring an overt act to restart the statute of limitations). We recently stated that

trademark infringement is widely recognized to be of a continuing nature. *Nordic Inn Condo. Owners' Assoc.*, 151 N.H. at 581-82.

Although we have never before determined whether freeze-out is a continuing tort, Massachusetts courts have directly addressed that issue and declined to extend the continuing wrong doctrine to include freeze-out. *Houle v. Low*, 556 N.E.2d 51, 53 (Mass. 1990); *Kirley v. Kirley*, 521 N.E.2d 1041, 1043 (Mass. App. Ct. 1988). In *Houle*, the Massachusetts Supreme Judicial Court held that the injuries suffered by a plaintiff alleging corporate freeze-out did not transform the alleged wrongdoing into a continuing tort. *Houle*, 556 N.E.2d at 53. The *Houle* court determined that a cause of action for freeze-out arose at a specific time: when the defendant shareholders notified the plaintiff shareholder of their decision to exclude him from a business venture. *Id.* We concur with this reasoning and conclude that the wrongdoing alleged by the petitioner in this case is not a continuing wrong. Even if all that the petitioner alleges is true, and the respondent continues to exclude him from employment at AMD, continues to take a salary without paying a salary to the petitioner, continues to refuse to permit him to participate in AMD's operations, and continues to ban him from AMD's premises, the acts causing the petitioner's injuries occurred prior to February 18, 2002, and the statute of limitations began to run when the acts occurred. Accordingly, we affirm the trial court's ruling that any action based upon events that occurred prior to February 18, 2002, is barred by the statute of limitations.

The petitioner next argues that, even if the statute of limitations bars consideration of events that occurred prior to February 18, 2002, the events that occurred thereafter constitute a freeze-out. Based upon the record before us, however, it appears that the petitioner never argued before the trial court that the events occurring after February 18, 2002, by themselves, constitute a freeze-out. "It is a long-standing rule that parties may not have judicial review of matters not raised in the forum of trial." *Bean v. Red Oak Prop. Mgmt.*, 151 N.H. 248, 250 (2004). It is the burden of the appealing party to provide this court with a record sufficient to decide the issues raised on appeal and to demonstrate that the appellant raised those issues before the trial court. *Id.* Because our rules affirmatively require the moving party to demonstrate where each question presented on appeal was raised below, *see* SUP. CT. R. 16(3)(b), failure of the moving party to comply with these requirements may be considered by the court regardless of whether the opposing party objects on those grounds. *Bean*, 151 N.H. at 250. At trial, the petitioner did not distinguish between events occurring before and after February 18, 2002, and, in fact, the petitioner did not mention that date in either the petition or at the hearing before the

trial court. The argument that the petitioner consistently presented to the trial court was that the respondent engaged in a course of conduct beginning in 1995 that increasingly excluded the petitioner from AMD. Further, the petitioner's appeal does not refer to any location in the record where he asked the trial court to consider solely the events occurring after February 18, 2002 as a freeze-out. Accordingly, we decline to address the petitioner's argument that the events occurring after February 18, 2002, by themselves, constituted a freeze-out.

*Affirmed.*

DALIANIS and DUGGAN, JJ., concurred.