**DIRECTORY ASSISTANTS, INC., Plaintiff,**

v.

**SUPERMEDIA, LLC, et al., Defendants.**

**Civil Action No. 2:11cv480.**

United States District Court,
E.D. Virginia,
Norfolk Division.

May 30, 2012.

Brett Jason Boskiewicz, Robinson & Cole LLP, Hartford, CT, Pro Hac Vice, Kathryn Elizabeth Kasper, John Becker Mumford, Jr., Hancock Daniel Johnson & Nagle PC, Glen Allen, VA, for Plaintiff.

Robert William McFarland, McGuire-Woods LLP, Norfolk, VA, for Defendants.

### OPINION AND ORDER

ROBERT G. DOUMAR, District Judge.

In the instant action, Plaintiff Directory Assistants, Inc., ("Plaintiff") seeks to sue Defendants Supermedia, LLC, Alejandro Caro, Steven Sapaugh, and Scott E. Duffy ("Defendants") for alleged tortious interference with business expectancy and defamation. Plaintiff also seeks a permanent injunction. This matter is currently before the Court on a Motion to Dismiss filed by Defendants pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth below, the Court **GRANTS** Defendant's Motion to Dismiss in its entirety and **DISMISSES** Plaintiff's Complaint with prejudice.

## I. *Factual and Procedural Background*

### A. Factual Allegations

#### a. The Complaint

As alleged in Plaintiff's Complaint, Plaintiff is an advertising consulting agency that helps businesses in different industries in different states advertise in yellow page directories. Compl. ¶¶ 8, 9. Plaintiff receives compensation for the knowledge

and services it provides based on how much a customer saves on its yellow page advertising after applying Plaintiff's strategies and recommendations. Compl. ¶ 10. Plaintiff competes with companies that publish yellow page directories or place advertising in those directories for a fee. *Id.*

According to Plaintiff, Defendant SuperMedia sells advertising solutions and places advertising into various advertising media in the Commonwealth of Virginia, including Superpages yellow page directories, Superpages.com, and the print directories for Verizon Communications, Inc. Compl. ¶¶ 11, 12. Defendants Caro and Duffy are sales representatives or "Media Consultants" for SuperMedia, Defendant Sapaugh is a District Sales Manager for SuperMedia, and all of the Defendants are compensated based on the fees that companies pay to advertise in SuperMedia's directories. Compl. ¶¶ 13–15.

Plaintiff alleges it has been the victim of several allegedly false and defamatory postings on consumer information websites, including RipOffReport.com, ScamInformer.com, InsiderPages.com, JudysBooks.com, and YellowPages.com. Compl. ¶ 16. Plaintiff has filed two lawsuits in federal court in Connecticut to have the postings removed. Compl. ¶ 17. Plaintiff specifically cites four allegedly false and defamatory postings concerning its business and/or its officers and employees on the website RipOffReport.com (the "Rip Off Report Posts"). Compl. ¶¶ 18–22. Additionally, Plaintiff cites one allegedly false and defamatory posting on the website scaminformer.com (the "Scam Informer Post"). Compl. ¶¶ 27–28.

Plaintiff alleges that on May 10, 2011, it received an e-mail from a prospective customer in Norfolk, Virginia. Compl. ¶ 29. This prospective customer informed Plaintiff that she had received an e-mail from

SuperMedia and Duffy (the "SuperMedia E-mail") that included links to the Rip Off Report Posts, the Scam Informer Post, court decisions concerning Plaintiff, and a blog including comments, opinions, and statements about Plaintiff and one of its employees. *Id.* According to Plaintiff, Caro compiled the links to the Rip Off Report Posts and Scam Informer Post in the SuperMedia E-mail, and on April 29, 2011, sent that information via e-mail to Sapaugh, then a District Sales Manager for SuperMedia, with a subject line reading "Info About Cutter—Please forward." Compl. ¶ 31. That same day, Sapaugh allegedly forwarded Caro's e-mail to at least twelve SuperMedia employees, including Caro and Duffy. Duffy then sent the SuperMedia E-mail to a prospective customer of Plaintiff's.

### B. Procedural Background

On August 26, 2011, Plaintiff filed its Complaint against Defendants for tortious interference with business expectancy and defamation. Plaintiff seeks monetary damages, punitive damages, attorneys' fees and litigation costs, interest, and a permanent injunction prohibiting Defendants from making further false or misleading statements regarding it or its employees.

On October 3, 2011, Defendants filed a Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted. Plaintiff filed a timely Memorandum in Opposition to Defendant's Motion to Dismiss on October 17, 2011, and Defendant filed a timely Reply on October 24, 2011. The Motion has been fully briefed and is now ripe for review.

## II. *Standard of Review*

### A. Rule 12(b)(6) Motion

A Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal

sufficiency of a complaint, and the court assumes the truth of all facts alleged in the complaint and the existence of any fact that can be proved, consistent with the complaint's allegations. *See Hishon v. King Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984); *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Although the court must take the facts in the light most favorable to the plaintiff, it need not accept the legal conclusions drawn from the facts. *See Schatz v. Rosenberg*, 943 F.2d 485, 489 (4th Cir.1991). Furthermore, the Court need not accept as true unwarranted inferences, unreasonable conclusions or arguments. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir.2009). The court should deny a motion to dismiss unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *De Sole v. United States*, 947 F.2d 1169, 1177 (4th Cir.1991); *see also Migdal v. Rowe Price–Fleming Int'l, Inc.*, 248 F.3d 321, 325 (4th Cir.2001).

Federal Rule of Civil Procedure 8(a)(2) requires only that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The facts upon which a complaint is based need not be set forth in detail. *See Conley v. Gibson*, 355 U.S. at 47, 78 S.Ct. 99. The Supreme Court's decisions in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009), have clarified how the sufficiency of a complaint is to be evaluated under Rule 8. Under these cases, there are two essential requirements for a pleading: that its allegations be sufficient and that its allegations be plausible.

In evaluating a complaint under *Twombly* and *Iqbal*, a district court must engage in a two-step process. First, the court must begin by "identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 129 S.Ct. at 1949. In other words, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Second, the court must decide whether the remaining allegations in the complaint—taken as true—state a "plausible claim for relief." *Id.* (quoting *Twombly*, 550 U.S. at 570, 127 S.Ct. 1955). This determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense" to decide whether the facts "permit the court to infer more than the mere possibility of misconduct." *Id.* at 1950 (citing *Iqbal v. Hasty*, 490 F.3d 143, 157 (2d Cir.2007)). In essence, "a claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1949.

### III. *Defendants' Motion to Dismiss*

#### A. The Communications Decency Act

Defendants argue that Plaintiff's claims for tortious interference and defamation fail as a matter of law because they are barred by 47 U.S.C. § 230(c), the Communications Decency Act ("CDA"). Under § 230(c)(1) of the CDA, "No provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." The statute defines the term "interactive computer service" as "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server, including specifically a service or system that provides access to the Internet ..." 47 U.S.C.

§ 230(f)(2). Furthermore, the CDA provides that "No cause of action may be brought and no liability imposed under any State or local law that is inconsistent with this section." 47 U.S.C. § 230(e)(3).

■ The Fourth Circuit has held that the plain language of § 230 creates a "federal immunity to any cause of action that would make service providers liable for information originating with a third-party user of the service." *Zeran v. America Online, Inc.*, 129 F.3d 327, 330 (4th Cir. 1997). The Court further stated that "§ 230 precludes courts from entertaining claims that would place a computer service provider in a publisher's role. Thus, lawsuits seeking to hold a service provider liable for its exercise of a publisher's traditional editorial functions—such as deciding whether to publish, withdraw, postpone or alter content—are barred." *Id.* It now appears that "the majority of federal courts have interpreted the CDA to establish broad 'federal immunity to any cause of action that would make service providers liable for information originating with a third-party user of a service.'" *Whitney Info. Network, Inc. v. Xcentric Ventures, LLC,* 2:04CV47 2008 WL 450095 at *7, n. 21 (M.D.Fla. Feb. 15, 2008) (citing *Almeida v. Amazon.com, Inc.,* 456 F.3d 1316, 1321 (11th Cir.2006)). Indeed, the Fourth Circuit has held that when a consumer review website is found to be a service provider and not an information content provider, the CDA precludes liability for defamation, tortious interference with business expectancy, and violations of the Lanham Act because the owner of the site did not contribute to the allegedly fraudulent nature of the comments at issue. *Nemet,* ■ F.3d at 257–58.

[2] Many circuits, including the Fourth Circuit, have held that the CDA creates federal immunity for providers. There is, however, very little case law regarding the application of the CDA to users. Therefore, the Court must answer the question whether the broad CDA immunity that courts have applied to providers also applies to users, since the relevant section of the statute discusses both providers and users. Given the clear language of the statute and the case law regarding providers, the Court finds that this broad federal immunity ■ extends to users.

[3] Defendants cite some case law for the proposition that the CDA protects users and passive publishers alike. However, the cases cited by Defendants do not contain a discussion of users in their holdings because these cases have focused mainly on providers and not users. In one case cited by Defendants, *Fair Hous. Council of San Fernando Valley v. Roommates.com, LLC,* 521 F.3d 1157, 1162 at n. 7 (9th Cir.2008), the court acknowledged that the CDA gives immunity to users of third-party content. Yet, the court went on to state that since that case did not involve any claims against users, it was omitting all references to user immunity when quoting and analyzing the statutory text. Nevertheless, the Court finds that the CDA protects users equally as it does providers. This reading of the statute flows naturally from what other federal courts, including the Fourth Circuit have held regarding providers. For example, the Fourth Circuit has held, "Congress thus established a general rule that providers of interactive computer services are liable only for speech that is properly attributable to them." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.,* 591 F.3d 250, 254 (4th Cir.2009) (citing *Universal Commc'n Sys., Inc. v. Lycos, Inc.,* 478 F.3d 413, 419 (1st Cir.2007)). Thus, in this Circuit, "state-law plaintiffs may hold liable the person who creates or develops unlawful content, but not the interactive computer service provider who merely en-

ables that content to be posted online." *Id.* (citing *Doe v. MySpace, Inc.,* 528 F.3d 413, 419 (5th Cir.2008); *Chicago Lawyers' Comm. for Civil Rights Under Law, Inc. v. Craigslist, Inc.,* 519 F.3d 666, 672 (7th Cir.2008); *Zeran,* 129 F.3d at 330–31).

Accordingly, this Court finds that a person who creates or develops unlawful content may be held liable, but that a user of an interactive computer service who finds and forwards via e-mail that content posted online in an interactive computer service by others is immune from liability. Having established that general rule, the Court must now answer whether Defendants qualify as users and whether the websites providing the various reports qualify as interactive computer services under the statute.

### 1. Interactive Computer Services

■ Plaintiff argues that discovery and a fact-intensive inquiry are necessary to determine whether the CDA applies in this matter because the allegations of the Complaint alone do not show that RipOffReport or ScamInformer meet the definition of interactive computer service. The Court disagrees.

Under the CDA, an interactive computer service provides or enables computer access by multiple users to a computer server, including specifically a service or system that provides access to the Internet. As alleged in the Amended Complaint, RipOffReport, ScamInformer, and the other websites cited allow many people access to a portal on the internet to post information either anonymously, or through a real or fictitious name, concerning products and services. Compl. ¶¶ 16–28. As such, courts have ruled that these types of websites are not internet content providers because they do not create the content that is posted. *See Nemet Chevrolet,* 591 F.3d at 260. Other people create this content. Therefore, courts have held that

websites such as the ones described in the Complaint are considered to be interactive computer services within the meaning of the CDA. *See, e.g., Global Royalties, Ltd. v. Xcentric Ventures, LLC,* 544 F.Supp.2d 929, 932 (D.Ariz.2008) (granting defendants' motion to dismiss after finding that plaintiff's assertion that defendants were information content providers with respect to the postings on RipOffReport.com insufficient as a matter of law); *Whitney Info. Network,* 2008 WL 450095 (finding RipOffReport.com was not an internet content provider but rather an interactive computer service). Nothing in the Complaint alleges that RipOffReport or the other websites created content. Rather, it is clear from the pleadings that they were interactive services which allowed others to create content. Therefore, the Court finds that the websites listed in the Complaint are interactive service providers under the CDA.

### 2. User

■ Plaintiff also contends that discovery is required before the Court can determine whether or not Defendants can be considered users under the CDA. In order for the Court to decide whether Defendants "used" the websites, Plaintiff argues that the Court must engage in a fact-dependent inquiry to determine if Defendants obtained the information from the interactive computer services themselves, or if the content was sent to them by someone else. The Court disagrees. As Plaintiff specifically alleges in the Complaint, "upon information and belief, Caro compiled the links to the Rip Off Report Posts and Scam Informer Post in the SuperMedia Email and ... sent the electronic mail to Sapaugh." Compl. ¶ 31. Thus, the Complaint provides the Court with enough facts to make a legal determination whether Defendants were users for purposes of the CDA.

The CDA does not contain a definition of "user." Therefore, using a canon of statutory construction, the Court will turn to the plain meaning of the word. *Webster's Third New International Dictionary* (2002) defines a "user" as someone who uses. Some definitions of the verb "to use" in *Webster's* include putting into action or service; avail oneself of; carry out a purpose or action by means of; utilize. *Id.* Based on the Complaint, it is clear to the Court that Defendants were users in that they put RipOffReport and other websites into action or service, and availed themselves of and utilized these websites by compiling their posts by copying links to commentary posted on them. Defendants sent an e-mail with these links to the allegedly defamatory posts within the company and to a customer. The action of compiling information from a website and e-mailing that information to others clearly constitutes use of that website and its services. There are no allegations that Defendants created the posts or altered them. Indeed, the content of the posts was not even contained in the email. Rather, the email only contained links to the posts. In *Whitney Information Network,* the court found that even if one of the defendants, a managing member of the company that publishes RipOffReport, did not qualify as a provider of an interactive computer service in his role as a manager, he was certainly a user of the interactive computer service provided by the RipOffReport website. 2008 WL 450095 (M.D.Fla. Feb. 15, 2008). Citing *Batzel v. Smith,* 333 F.3d 1018, 1032 (9th Cir.2003), the court in *Whitney* found that if the defendants were screening the material submitted and were removing offensive content, that constituted using the interactive computer service (in addition to providing the service), it made the defendants users, and they were, therefore, immune under the CDA. In this case, by going to websites like RipOffReport, reading reports that had been posted, and compiling links to these posts in an email, Defendants likewise were users of an interactive computer service. They are, therefore, also immune under the CDA since "no cause of action may be brought and no liability imposed under any State or local law that is inconsistent with this section." 47 U.S.C. § 230(e)(3). The Fourth Circuit has clearly held that when CDA immunity applies it precludes liability for defamation and tortious interference with business expectancy. *See Nemet,* 591 F.3d 250.

## IV. *Conclusion*

Plaintiff fails to state a claim upon which relief can be granted because the CDA applies, and Plaintiff's Complaint is dismissed with prejudice. As the court stated in *Global Royalties,* 544 F.Supp.2d at 932,

"It is obvious that a website entitled RipoffReport encourages the publication of defamatory content. However, there is no authority for the proposition that this makes the website operator responsible, in whole or in part, for the "creation or development" of every post on the site. Essentially, that is plaintiffs' position. After all, plaintiffs have not alleged that defendants solicited Sullivan's postings in particular, or that they specifically solicited any postings targeting Global. Nor have they alleged that defendants altered Sullivan's comments, or had any more than the most passive involvement (providing a list of possible titles) in composing them. Unless Congress amends the statute, it is legally (although perhaps not ethically) beside the point whether defendants refuse to remove the material, or how they might use it to their advantage. Through the CDA, 'Congress granted most Internet services immunity from liability for publishing false or defamatory material so long as the information was provided by

another party.' *Carafano v. Metrosplash.com, Inc.,* 339 F.3d 1119, 1122–23 (9th Cir.2003). Here, the material was unequivocally provided by another party."

Similar to *Global Royalties,* there is no authority in the statute or case law that makes a user responsible for the creation or development of posts on a website that is an interactive computer service. In enacting the CDA, Congress prohibited courts from entertaining claims that would place both a computer service provider and user in a publisher's role. Therefore, lawsuits seeking to hold either a service provider or a user liable for their exercise of a publisher's traditional editorial functions are barred.

Plaintiff has not alleged that Defendants engaged in the traditional role of a publisher of content by soliciting the posts, creating them, or altering them. Nowhere has Plaintiff pleaded that Defendants actually wrote, created, or developed the allegedly defamatory content. Rather, as alleged in the Complaint, Defendants were downstream users of content created by other people and posted on these websites. Defendants' involvement was passive in nature-compiling links to the posts and sending those links via e-mail. If, on the other hand, Plaintiff had some evidence that Defendants had a hand in creating the allegedly defamatory posts, it may have had a case. Unfortunately, as the *Global Royalties* court indicated, Congress has granted providers and users of interactive computer services totally immunity under the CDA. In so doing, Congress has granted anonymous posters on these websites a license to libel people and companies because the people and companies who provide the fora for this content, and the subsequent users of it, are immune from common law defamation suits. This license is clearly subject to tremendous abuse, and the Court has serious misgivings about this Circuit's broad interpretation of § 230 immunity. The prospect of blanket immunity for those who intentionally redistribute defamatory statements could have widespread and potentially catastrophic consequences for individuals and entities alike. Nevertheless, under the CDA the Court's hands are tied. Plaintiff may, under § 230, seek relief against the originators of the defamatory Internet publications, but Plaintiff has no remedy against Defendants here.

Accordingly, the Court hereby **GRANTS** Defendants' Motion to Dismiss in its entirety. The Court finds that Defendants are users of an interactive computer service under the CDA, and Plaintiffs claims are, therefore, barred and must fail as a matter of law. The Court does not reach the merits of other legal arguments put forth by Plaintiff and Defendants since Plaintiff has not surpassed this initial hurdle. Accordingly, Plaintiffs Complaint is hereby **DISMISSED** with prejudice.

The Clerk is **DIRECTED** to deliver a copy of this Opinion and Order to all Counsel of Record in this case.

**IT IS SO ORDERED.**