In the

# United States Court of Appeals

## For the Seventh Circuit

No. 20-3378

RICHARD JEFFERSON DEIBEL,

*Plaintiff-Appellant,*

*v.*

LARRY HOEG,[*] AARON HOEG, and ROGER STEFFEN,

*Defendants-Appellees.*

Appeal from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
No. 1:18-cv-03791-TWP-MJD — **Tanya Walton Pratt**, *Chief Judge.*

ARGUED MAY 11, 2021 — DECIDED MAY 25, 2021

Before EASTERBROOK, RIPPLE, and KANNE, *Circuit Judges.*

---

[*] Counsel for appellees represents that Larry Hoeg died "shortly before this appeal was filed." Fed. R. App. P. 43(a)(3) provides that the appellant may proceed as if the death had not occurred but that substitution of parties must be accomplished under Rule 43(a)(1) in the court of appeals. Both sides have ignored this requirement. Unless within ten days Deibel files an appropriate motion for substitution under Rule 43(a)(1) we will dismiss Larry Hoeg as a party.

EASTERBROOK, *Circuit Judge*. In 1986 Richard Deibel, Larry Hoeg, and Roger Steffen founded a filtration business, which they organized as Hy-Pro Corporation. Deibel became its president and received 2,500 shares, representing 12.5% of the authorized stock. Deibel guaranteed Hy-Pro's payment of a $100,000 debt to a bank. Within a year Deibel demanded that Larry Hoeg leave. When Hoeg refused, Deibel quit. He held onto his stock even after withdrawing from management.

Litigation ensued in state court. The suit was settled, but the settlement was not reduced to writing. Deibel insists that the settlement had two terms: Hy-Pro would pay $15,000 to a corporation that Deibel controlled and arrange with the bank to release his guarantee. Hoeg and Steffen assert that the settlement had three terms: the payment, the release, and Deibel's surrender of his shares. It is unusual for outsiders to own stock in closely held corporations, so the third term of the settlement (as Hoeg and Steffen depicted it) is not surprising. Soon the parties were back in state court, disputing the terms on which they had settled their dispute. For reasons that this record does not reveal, Indiana's judiciary closed the case without settling the settlement's terms.

Almost 30 years later, Deibel filed this federal suit to renew his contention that the settlement allows him to retain his shares. The source of his new interest is the fact that Hy-Pro was sold in 2017 for more than $20 million, and a 12.5% cut of that would exceed $2.5 million. The suit is governed by Indiana law, which sets a two-year period of limitations for claims of this kind. See Ind. Code §34-11-2-4. Unsurprisingly, the district court dismissed the suit as untimely. 2020 U.S. Dist. LEXIS 211455 (S.D. Ind. Nov. 12, 2020). But Deibel

maintains that he was still an investor when the firm was sold in 2017—and, if not, that a firm's refusal to recognize someone as an investor is a "continuing wrong" so that he can sue any time until the end of the universe. The district court thought that these contentions have neither factual nor legal support, and we agree with that conclusion.

Since 30 years is more than an order of magnitude greater than the two years allowed by state law, we need not pin down the exact date on which Deibel's claim accrued. It is enough to identify the years in which potentially important events occurred. The settlement dates to 1992. Deibel did not return his shares, and the lawyer representing Hoeg and Steffen told them that Hy-Pro could cancel Deibel's stock if he continued to hold the certificates. Hy-Pro did just that; Deibel has not been on the company's books as a shareholder since 1992. He protested in state court that he (or his firm) had not received the agreed $15,000; counsel for Hoeg and Steffen sent a check for the money and again demanded the return of Deibel's shares. The state court closed the case in 1993 after a conference (which was not transcribed).

In 1993 Deibel's lawyer sent him a letter telling him that Hy-Pro no longer considered him to be a shareholder. Counsel sent a similar letter in 1995, adding that if Deibel disagreed with Hy-Pro's action he could return to court. In 1997 Deibel sent Hoeg a letter complaining about what Deibel called the "conversion" of his stock. The same year Deibel received a letter from the Internal Revenue Service telling him that Hy-Pro did not deem him a shareholder. That was significant because Hy-Pro was a Subchapter S corporation. It had taken advantage of a provision permitting corporations with ten or fewer shareholders to be treated as equiva-

lent to partnerships. A Subchapter S corporation does not pay income tax, but it must report its profit and allocate that amount among the investors, who owe tax on their portions whether or not the corporation pays dividends. Deibel had been reporting himself to the IRS as one of Hy-Pro's shareholders but had not reported either actual or imputed income, because Hy-Pro, which did not view him as a shareholder after 1992, had not told him what to tell the IRS. (Subchapter S corporations must provide their investors information about taxable income on form K-1, which Deibel had not received since 1993.) Deibel took the IRS's advice and stopped identifying himself as one of Hy-Pro's investors. After January 1998 he never tried to learn from Hy-Pro how much income a 12.5% owner should report, and he did not pay federal tax on any of Hy-Pro's profits.

Twenty years after ceasing to report to the IRS as an investor in Hy-Pro, Deibel filed this suit. The district court concluded that his claim accrued no later than 1998, when he stopped telling the IRS that he was a shareholder in Hy-Pro, thus demonstrating knowledge that he no longer owned stock in Hy-Pro.

As Deibel sees it, corporations in Indiana lack the authority to cancel shares that investors have not returned—and, since a corporation can't do so ("ultra vires," Deibel calls it), then Hy-Pro didn't do so and he must still be a shareholder. This is wishful thinking. People and corporations commit legal errors all the time. The existence of an error is a reason for litigation, not a reason why the error couldn't have happened and therefore must not have happened. The record shows that Hy-Pro removed Deibel from its shareholder list in 1992. He took 26 years to sue, making this litigation far

too late unless a corporation's refusal to recognize someone as an investor is treated as a continuing wrong.

A continuing *injury* may exist without a continuing *wrong*. If A kicks B in the shin, B may ache for days—but the time to sue starts running with the kick, not the last tinge of pain. See, e.g., *United States v. Kubrick*, 444 U.S. 111 (1979); *Pitts v. Kankakee*, 267 F.3d 592, 595 (7th Cir. 2001). Monthly kicks to the shin would be continuing wrongs—one tort per kick, each with its own period of limitations—but a continuing hurt from any given kick does not affect the time to sue.

Federal law distinguishes not only between continuing injury and continuing wrong, but also between discrete wrongs and cumulative wrongs. *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101 (2002), illustrates the difference. The Court held that each discrete act—say, a refusal to hire someone—has its own period of limitations, even if the same defendant commits a series of similar acts. But when it takes multiple acts to add up to a single wrong—say, a course of harassment that in the aggregate may create discriminatory conditions of employment—the time to sue runs from the last such act rather than the first, because it takes multiple similar events to justify litigation. See also *Turley v. Rednour*, 729 F.3d 645, 654–55 (7th Cir. 2013) (concurring opinion). In *Morgan*'s framework, the cancellation of shares is a discrete wrong, and the time for suit begins immediately.

We have been using illustrations drawn from federal law, and Indiana could take a different approach. It doesn't, as far as we can see, but then it has never considered when a claim based on a corporate freezeout accrues. ("Freezeout" is a word often used to describe the exclusion of a minority investor.) Because Indiana is among the many states whose

corporate law is based on the ABA's Model Business Corporation Act, we looked at how other states using the model act treat freezeouts. The dominant rule is that the claim accrues when the exclusion occurs. Here's a statement from the Supreme Court of New Hampshire:

> The *Houle* court determined that a cause of action for freeze-out arose at a specific time: when the defendant shareholders notified the plaintiff shareholder of their decision to exclude him from a business venture. We concur with this reasoning and conclude that the wrongdoing alleged by the petitioner in this case is not a continuing wrong.

*Thorndike v. Thorndike*, 154 N.H. 443, 447 (2006), citing *Houle v. Low*, 556 N.E.2d 51, 53 (Mass. 1990). North Carolina agrees. *Stratton v. Royal Bank of Canada*, 211 N.C. App. 78, 87 (2011) (the continuing-wrong doctrine does not apply because "the continued deprivation of shareholder rights and nonpayment of dividends were not continual violations, but rather 'continual ill effects' of the conversion"). One state has found *Thorndike* distinguishable when a course of oppressive conduct occurs (a cumulative-violation situation). See *Baur v. Baur Farms, Inc.*, 780 N.W.2d 249 (Iowa App. 2010) (nonprecedential). None of the cases we have located treats a simple freezeout as a continuing wrong, so we predict that Indiana will not do so either.

Deibel was injured in 1992 when Hy-Pro cancelled his shares. The nature of that injury sank in no later than 1998. Waiting another 20 years to complain is far too long.

AFFIRMED