NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by email at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: https://www.courts.nh.gov/our-courts/supreme-court

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Hillsborough-northern judicial district
No. 2020-0496

DEBBIE BANAIAN

v.

ANN ELIZABETH BASCOM & a.

Argued: October 20, 2021
Opinion Issued: May 11, 2022

Shaughnessy Raiche, PLLC, of Bedford (Brian C. Shaughnessy on the brief and orally), for the plaintiff.

Morrison Mahoney LLP, of Manchester (Adam R. Mordecai on the brief and orally), for defendant Jacob D. MacDuffie.

Desmarais Law Group, PLLC, of Manchester (Debra L. Mayotte on the brief and orally), for defendant Katie Moulton.

Lucas Law, PLLC, of Wolfeboro (Allen J. Lucas on the memorandum of law), for defendant Ethan Hollen.

Cronin Bisson & Zalinsky, P.C., of Manchester (Laura N. Carlier on the memorandum of law), for defendant Shannon Bossidy.

Maggiotto, Friedman & Feeney, PLLC, of Concord (Christine Friedman on the memorandum of law), for defendant Aaron Bliss.

Brady/Donahue, of Springfield, Vermont (John E. Brady on the brief), for defendant Bryan Gagnon.

HANTZ MARCONI, J.  The plaintiff, Debbie Banaian, appeals an order of the Superior Court (Messer, J.) granting motions to dismiss filed by defendants Aaron Bliss, Shannon Bossidy, Bryan Gagnon, Jacob D. MacDuffie, and Katie Moulton.  The sole issue on appeal is whether the defendants, who retweeted a defamatory tweet (the retweeter defendants) initiated by another individual, are "users" within the meaning of the Communications Decency Act, 47 U.S.C. § 230(c)(1) (2018) (CDA), and therefore entitled to immunity from the plaintiff's claims for defamation and reckless infliction of emotional distress.  We affirm.

I.  Background

The following facts are taken from the plaintiff's complaint, which we accept as true.  See Thorndike v. Thorndike, 154 N.H. 443, 444 (2006).  The plaintiff was a teacher at Merrimack Valley Middle School in May 2016, when a student at Merrimack Valley High School "hacked" the Merrimack Valley Middle School website and changed the plaintiff's webpage, creating a post that "suggest[ed] that [the plaintiff] was sexually pe[r]verted and desirous of seeking sexual liaisons with Merrimack Valley students and their parents."  Another student took a picture of the altered website and tweeted that image over Twitter.  The retweeter defendants retweeted the original tweet.  As a result, the plaintiff was subject to "school-wide ridicule," was unable to work for approximately six months, and suffered financial, emotional, physical, and reputational harm.

The plaintiff sued a number of defendants for defamation and reckless infliction of emotional distress.  These retweeter defendants moved to dismiss, arguing that the plaintiff's claims against them were barred by section 230(c) of the CDA.  The trial court agreed, determining that the retweeters' actions of simply "clicking the . . . 'retweet' icon and republishing someone else's content," were shielded by section 230.  Accordingly, the trial court dismissed the plaintiff's case against these retweeter defendants.  Following a hearing, the

2

trial court denied the plaintiff's motion to reconsider. The trial court subsequently directed that its order be treated as a final decision on the merits as to the dismissed parties. See Super. Ct. R. 46(c)(1). This appeal followed.

II. Analysis

On appeal, the plaintiff argues that the trial court erred in ruling that the retweeter defendants were "users" of an interactive computer service under the CDA. In reviewing a trial court's ruling on a motion to dismiss, we consider whether the plaintiff's allegations are reasonably susceptible of a construction that would permit recovery. Thorndike, 154 N.H. at 446. Although we assume the truth of the facts alleged in the plaintiff's pleadings and construe all reasonable inferences in the light most favorable to her, we will uphold the granting of the motion to dismiss if the facts pled do not constitute a basis for legal relief. Id.

Resolving the issue on appeal requires that we engage in statutory construction. The interpretation of a statute is a question of law, which we review de novo. Dube v. N.H. Dept. of Health and Human Services, 166 N.H. 358, 364 (2014). We interpret federal statutes in accordance with federal policy and precedent. Id. When interpreting a statute, we first look to the language of the statute itself and, if possible, construe that language according to its plain and ordinary meaning. Id. When the language of the statute is clear on its face, its meaning is not subject to modification. Id. We will neither consider what Congress might have said, nor add words that it did not see fit to include. Id. at 364-65.

The CDA provides in pertinent part that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1). An "interactive computer service" is "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server, including specifically a service or system that provides access to the Internet." 47 U.S.C. § 230(f)(2) (2018). An "information content provider" is "any person or entity that is responsible, in whole or in part, for the creation or development of information provided through the Internet or any other interactive computer service." 47 U.S.C. § 230(f)(3) (2018). "No cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with" section 230. 47 U.S.C. § 230(e)(3) (2018).

The statute sets forth findings and a statement of policy. See 47 U.S.C. § 230(a) & (b) (2018). Congress recognized the Internet as a "forum for a true diversity of political discourse, unique opportunities for cultural development, and myriad avenues for intellectual activity," and that the "Internet and other

3

interactive computer services have flourished, to the benefit of all Americans, with a minimum of government regulation." Id. § 230(a)(3)-(4). The stated policy of the United States includes the promotion of "the continued development of the Internet and other interactive computer services and other interactive media" and the preservation of "the vibrant and competitive free market" for such services, "unfettered by Federal or State regulation," as well as the encouragement of "the development of technologies which maximize user control over what information is received by individuals." Id. § 230(b)(1)-(3).

Separated into its elements, section 230(c)(1) "only protects from liability (1) a provider or user of an interactive computer service (2) whom a plaintiff seeks to treat, under a State law cause of action, as a publisher or speaker (3) of information provided by another information content provider." Teatotaller, LLC v. Facebook, Inc., 173 N.H. 442, 450 (2020) (quotation omitted); see Universal Communication Systems, Inc. v. Lycos, Inc., 478 F.3d 413, 418 (1st Cir. 2007).

"Section 230 of the CDA provides broad immunity to entities that facilitate the speech of others on the Internet." Teatotaller, LLC, 173 N.H. at 448 (quotation and ellipsis omitted); see Bennett v. Google, LLC, 882 F.3d 1163, 1166 (D.C. Cir. 2018) (explaining that the intent of the CDA is "to promote rather than chill internet speech"). "There has been near-universal agreement that section 230 should not be construed grudgingly, but rather should be given broad construction." Teatotaller, LLC, 173 N.H. at 449 (quotations omitted).

The trial court found, and the plaintiff does not dispute, that Twitter falls within the definition of an "interactive computer service." Twitter is a social media platform that "enables users to publish short messages to the general public called 'tweets,' to republish or respond to others' tweets, and to interact with other users." Campbell v. Reisch, 367 F. Supp. 3d 987, 989 (W.D. Mo. 2019). "A user 'Retweets' a Tweet when he or she elects to publish the original Tweet in full on his or her Twitter profile. A Retweet shows the original Tweet in full, including attribution to the person who initially published the Tweet." McNeil v. Biaggi Productions, LLC, No. 3:15cv751, 2017 WL 2625069 at *3 n.13 (E.D. Va. June 16, 2017).

The meaning of "user" in the first element of section 230(c)(1) is the sole issue in this appeal. The plaintiff argues that "[a] person who knowingly retweets defamatory information is not a 'user' of an interactive computer service the CDA was designed to protect from defamation liability." She asserts that "[n]othing in the text of Section 230, or in the legislative history suggests that Congress intended to provide immunity to individual users of a website," and that "[t]he term 'user' of an interactive computer service should be interpreted to mean libraries, colleges, computer coffee shops, and companies that at the beginning of the internet were primary access points for many people." The plaintiff further

4

asserts that "because the CDA changes the common law of defamation, the statute must speak directly to immunizing individual users." (Capitalization and bolding omitted.)

The trial court "recognized that the vast majority of the reported cases that address whether a defendant is immune from suit under Section 230 involve internet service providers . . . , and not individual users." Nonetheless, cases that have addressed this issue have determined that the broad immunity in the statute extends to individual users. For example, in Barrett v. Rosenthal, 146 P.3d 510 (Cal. 2006), an individual who posted a copy of an article she had received via email on two newsgroup websites was sued for republishing defamatory information. Barrett, 146 P.3d at 514. The California Supreme Court addressed what "appear[ed] to be the first published case in which section 230 immunity ha[d] been invoked by an individual who had no supervisory role in the operation of the Internet site where allegedly defamatory material appeared, and who thus was clearly not a provider of an 'interactive computer service' under the broad definition provided in the CDA." Id. at 515. Employing "standard rules of statutory construction," the court looked to the ordinary meaning of the word "user" to discern "legislative purpose." Id. at 526.

In doing so, the court determined that the term "'[u]ser' plainly refers to someone who uses something, and the statutory context makes it clear that Congress simply meant someone who uses an interactive computer service." Id. As the court reasoned,

> Section 230(c)(1) refers directly to the "user of an interactive computer service." Section 230(f)(2) defines "interactive computer service" as "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server, including specifically a service or system that provides access to the Internet." Section 230(a)(2) notes that such services "offer users a great degree of control over the information that they receive," and section 230(b)(3) expresses Congress's intent "to encourage the development of technologies which maximize user control over what information is received by individuals, families, and schools who use the Internet and other interactive computer services." Thus, Congress consistently referred to "users" of interactive computer services, specifically including "individuals" in section 230(b)(3).

Id. (ellipsis omitted).

Given that Congress declared that "'[n]o provider or user of an interactive computer service shall be treated as [a] publisher or speaker,'" the court found no basis "for concluding that Congress intended to treat service providers and

5

users differently," and that "the statute confers immunity on both." Id. at 527. Thus, the court concluded, "Congress employed the term 'user' to refer simply to anyone using an interactive computer service," id. at 515, and held that section 230(c)(1) immunizes such individual users, id. at 513.

Subsequently, the United States District Court for the Eastern District of Virginia, noting that the CDA does not contain a definition of "user," turned to the plain meaning of the word. Directory Assistants, Inc. v. Supermedia, LLC, 884 F. Supp. 2d 446, 452 (E.D. Va. 2012). Citing the dictionary definition of "user" as "someone who uses," and the verb "to use" as "putting into action or service; avail oneself of; carry out a purpose or actions by means of; utilize," the court reasoned that the defendants' "action of compiling information from a website and e-mailing that information to others clearly constitutes use of that website and its services." Id. There was no allegation that the defendants "engaged in the traditional role of a publisher of content by soliciting the posts, creating them, or altering them," or that the defendants "actually wrote, created, or developed the allegedly defamatory content." Id. at 453. Rather, the defendants were "downstream users of content created by other people and posted" on the websites at issue. Id.

The court determined that "there is no authority in the statute or case law that makes a user responsible for the creation or development of posts on a website that is an interactive computer service" and that "[i]n enacting the CDA, Congress prohibited courts from entertaining claims that would place both a computer service provider and user in a publisher's role." Id. Accordingly, the court found that "a person who creates or develops unlawful content may be held liable, but . . . a user of an interactive computer service who finds and forwards via e-mail that content posted online in an interactive computer service by others is immune from liability." Id. at 451.

We are persuaded by the reasoning set forth in these cases. The plaintiff identifies no case law that supports a contrary result. Rather, the plaintiff argues that because the text of the statute is ambiguous, the title of section 230(c) — "Protection for 'Good Samaritan' blocking and screening of offensive material" — should be used to resolve the ambiguity. We disagree, however, that the term "user" in the text of section 230 is ambiguous. See Webster's Third New International Dictionary 2524 (unabridged ed. 2002) (defining "user" to mean "one that uses"); American Heritage Dictionary of the English Language 1908 (5th ed. 2011) (defining "user" to mean "[o]ne who uses a computer, computer program, or online service"). "[H]eadings and titles are not meant to take the place of the detailed provisions of the text"; hence, "the wise rule that the title of a statute and the heading of a section cannot limit the plain meaning of the text." Brotherhood of R.R. Trainmen v. Baltimore & O.R. Co., 331 U.S. 519, 528-29 (1947). Likewise, to the extent the plaintiff asserts that the legislative history of section 230 compels the conclusion that Congress did not intend "users" to refer to individual users, we do not consider legislative

history to construe a statute which is clear on its face. See Adkins v. Silverman, 899 F.3d 395, 403 (5th Cir. 2018) (explaining that "where a statute's text is clear, courts should not resort to legislative history").

Despite the plaintiff's assertion to the contrary, we conclude that it is evident that section 230 of the CDA abrogates the common law of defamation as applied to individual users. The CDA provides that "[n]o cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with this section." 47 U.S.C. § 230(e)(3). We agree with the trial court that the statute's plain language confers immunity from suit upon users and that "Congress chose to immunize all users who repost[] the content of others." That individual users are immunized from claims of defamation for retweeting content that they did not create is evident from the statutory language. See Zeran v. America Online, Inc., 129 F.3d 327, 334 (4th Cir. 1997) (explaining that the language of section 230 makes "plain that Congress' desire to promote unfettered speech on the Internet must supersede conflicting common law causes of action").

We hold that the retweeter defendants are "user[s] of an interactive computer service" under section 230(c)(1) of the CDA, and thus the plaintiff's claims against them are barred. See 47 U.S.C. § 230(e)(3). Accordingly, we uphold the trial court's granting of the motions to dismiss because the facts pled in the plaintiff's complaint do not constitute a basis for legal relief.

Affirmed.

MACDONALD, C.J., and BASSETT and DONOVAN, JJ., concurred.