Hillsborough-southern judicial district
No. 2009-228

### ALFRED HUARD

### v.

### TOWN OF PELHAM & a.

Argued: November 4, 2009
Opinion Issued: December 31, 2009

*Sakellarios & Associates, LLC*, of Manchester (*Jean-Claude Sakellarios* on the brief), and *Walsh & Associates*, of Manchester (*Robert M. Walsh* on the brief and orally), for the petitioner.

*Donahue, Tucker & Ciandella, PLLC*, of Exeter (*John L. McGowan* and *John J. Ratigan* on the brief, and *Mr. McGowan* orally), for the respondents.

DALIANIS, J. The petitioner, Alfred Huard, appeals three orders of the Superior Court (*Groff*, J., *Nicolosi*, J., and *Barry*, J.) in favor of the respondents, Town of Pelham, Roland Soucy, acting code enforcement officer, and Jeffrey Gowan, town planning officer. The first order denied his motion to enforce settlement. The second and third orders granted the town's motions for summary judgment. We affirm.

The following facts are not in dispute. Huard owned and operated an automobile transmission repair business. In 2004, he purchased property at 3 Windham Road, located in a residential zone. He used the property for both residential and business purposes, believing that he could do so pursuant to a use variance granted to prior owners of the property in 1985. The 1985 use variance permitted repair of "carburetors, fuel pumps alternators, etc." In August 2006, Huard received a letter from the town's code compliance officer stating that "operation of an automobile transmission repair business in a residential zone is not allowed," and that pursuant to article XIII, section 307-88(D) of the town's zoning ordinance, the 1985 use variance had expired due to non-use for one year or longer. *See* PELHAM, N.H., REV. ORDINANCES art. XIII, § 307-88(D) (2006) (repealed 2007) ("[V]ariances not used for one (1) year or longer shall expire by operation of law at the end of said one year period.").

Huard did not appeal the code compliance officer's decision that the use variance had expired. He did, however, apply for a new use variance in September 2006, which was denied. He did not file a motion for rehearing with the town's zoning board of adjustment (ZBA) upon its denial of his

request for a new variance. Instead, in May 2007, he filed a petition for injunctive relief and declaratory judgment in the superior court.

In March 2007, two months before Huard filed his petition, the town voted to repeal article XIII, section 307-88(D). In light of that change, town counsel drafted a stipulation to stay the superior court action pending further proceedings at the local level. Both parties signed the agreement, and the trial court approved it on October 30, 2007. The stipulation states, in relevant part:

1. [Huard] shall be allowed to resume use of the premises for the transmission repair business, pending a final order or other resolution of the Petition.

2. The matter shall be stayed to allow the town's administrative official to make an administrative decision on the issue whether the original variance can be reasonably construed as permitting the proposed transmission repair use, or such other articulation of this issue as the administrator shall make. The administrative decision shall be made in light of the fact that the provision of the Pelham zoning ordinance that provides for the extinguishment of variances on grounds of discontinued use for a period of over one year has been repealed.

3. This administrative decision shall be made within 7 business days of the Court's approval of this stipulation, and shall be published by providing abutters . . . with notice of the decision by certified mail, and by posting copies in two public places. The notice shall state that an appeal may be taken within 30 days of the decision to the ZBA, and not thereafter.

4. That the provisions of this Stipulation are without prejudice to the rights of the parties to assert such claims or defenses that they may have.

In accordance with the stipulation, the town's administrative official issued his decision, stating that the 1985 use variance "remains in force today and reasonably encompasses transmission repairs . . . as proposed by Huard." Subsequently, abutters appealed to the ZBA. The ZBA agreed that Huard's transmission repair business was within the scope of the 1985 variance. However, it also ruled, contrary to the administrative decision, that the 1985 variance had expired due to non-use for longer than one year as a result of a foreclosure on the property in 1989. The ZBA reasoned that, although use variances no longer expire due to non-use occurring after

2007, the use variance at issue here expired many years earlier under the old zoning ordinance, and thus could not be revived simply because the ordinance had changed.

Huard filed a motion to enforce settlement, which was denied. The town filed two motions for summary judgment on the claims Huard raised in his May 2007 petition. In the first, the town argued, among other things, that the trial court lacked jurisdiction over two of Huard's claims because he failed to exhaust his administrative remedies. In the second, the town argued that the ZBA's decision that Huard's variance had expired was not an unconstitutional taking. The trial court granted both motions.

Huard first argues that the trial court erred in denying his motion to enforce settlement. He does not argue that the ZBA erred as a matter of law in finding that his variance was still subject to the repealed one-year expiration provision. He argues only that the ZBA's conclusion that the repealed ordinance applied to him violated the terms of the stipulation. We limit our analysis, accordingly, to whether the action by the ZBA violated the terms of the stipulation.

■ Huard essentially argues that the stipulation limited the scope of the local proceeding to one issue: whether his transmission repair business "was within the scope of the 1985 variance," and, therefore, that the ZBA's conclusion that his variance had expired contravenes the terms of the parties' agreement. The town maintains that "[a]ll events that followed from the Stipulation . . . were legally permissible and contemplated under the Stipulation." In denying Huard's motion, the trial court did not specifically rule upon the meaning of the stipulation. It ruled only that: "It is clear to the Court that the parties did not have a mutual understanding of the terms of the agreement. There was no meeting of the minds." We apply the law relevant to our review of stipulations, and we reach the same result as the trial court, albeit on different grounds. *See In re Trailer and Plumbing Supplies*, 133 N.H. 432, 438 (1990) (noting that when a trial court reaches the correct result, but on mistaken grounds, this court will sustain the decision if there are valid alternative grounds to support it).

■ A stipulated agreement is contractual in nature and, therefore, is governed by contract rules. *Public Serv. Co. of N.H. v. Town of Seabrook*, 133 N.H. 365, 370 (1990). The interpretation of a contract is a question of law, which we review *de novo. Czumak v. N.H. Div. of Developmental Servs.*, 155 N.H. 368, 373 (2007). When interpreting a written agreement, we give the language used by the parties its reasonable meaning, considering the circumstances and the context in which the agreement was

negotiated, and reading the document as a whole. *Id.* Absent ambiguity, the parties' intent will be determined from the plain meaning of the language used in the agreement. *Id.*

■ Huard's assertion that the stipulation limited the scope of the local proceedings to the single issue of whether his transmission repair business "was within the scope of the 1985 variance" is contrary to its plain meaning. The stipulation states: "The matter shall be stayed to allow the town's administrative official to make an administrative decision on the issue whether the original variance can be reasonably construed as permitting the proposed transmission repair use, or such other articulation of this issue as the administrator shall make." The stipulation further states that abutters would be given notice, that appeals could be taken to the ZBA and that parties could assert such claims and defenses as they might have. The plain meaning of the stipulation does not establish an intent to abrogate the general powers of the ZBA to review an administrative decision. *See* PELHAM, N.H., REV. ORDINANCES art. XIII, § 307-83(A) (2006) (providing that the ZBA has "[t]he power to hear and decide appeals where it is alleged there is an error in any . . . decision . . . made by an administrative official in the enforcement of the Zoning Chapter"). By the same token, it does not place any limitation upon what a ZBA appeal proceeding would address or what the outcome of that proceeding would be. Thus, the trial court did not err in denying Huard's motion.

Next, Huard argues that the trial court erred in granting the town's motion for summary judgment by concluding that it lacked jurisdiction to hear his petition for injunctive relief and declaratory judgment because he failed to exhaust his administrative remedies. He concedes that he did not exhaust his administrative remedies, but argues that he is not required to do so "if it is obvious that it is a waste of time and will more likely than not result in the denial of his requests." He argues that he was entitled to proceed directly to the superior court to resolve the purely legal question of "whether the ZBA can reactivate a repealed zoning ordinance to achieve the result it seeks." We disagree.

■ Although the town's motion requests summary judgment, we construe it as a motion to dismiss for failure to exhaust administrative remedies. The general rule is that administrative remedies must first be exhausted before a party brings a matter to the courts. *See Prop. Portfolio Group v. Town of Derry*, 154 N.H. 610, 616 (2006). The rule "is particularly applicable when . . . substantial questions of fact exist concerning a city zoning ordinance, matters that belong in the first instance to the designated local officials." *V.S.H. Realty, Inc. v. City of Rochester*, 118 N.H. 778, 782 (1978). "[T]his sound rule is based on the reasonable policies of encouraging

the exercise of administrative expertise, preserving agency autonomy, and promoting judicial efficiency." *Id.* However, "it is proper to permit the use of the declaratory judgment procedure to challenge the validity of a zoning ordinance . . . where the question is one peculiarly suited to judicial rather than administrative treatment and no other adequate remedy is available." *Prop. Portfolio Group*, 154 N.H. at 616-17 (quotation and ellipses omitted). Under these circumstances, a petitioner is not required to exhaust his administrative remedies. *Id.*

■ Whether the one-year expiration provision applied to Huard's variance and whether his transmission repair business fell within the scope of the variance were both issues involving applications of the town's zoning ordinance to the facts of his case. These were not questions "peculiarly suited to judicial rather than administrative treatment." *Prop. Portfolio Group*, 154 N.H. at 616-17 (quotation omitted). To the contrary, they are precisely the types of issues that involve "fact[s] . . . concerning a . . . zoning ordinance, matters that belong in the first instance to the designated local officials." *V.S.H. Realty, Inc.*, 118 N.H. at 782. The ZBA, as the local authority, is better suited to make findings of fact with respect to the characteristics of Huard's property, the current use of other property in the area of 3 Windham Road, and the impact of the original use variance, all matters, in the first instance, of local concern. As for whether the one-year expiration provision applied to the use variance, resolution of this issue involved issues of fact with respect to the property's prior ownership and previous use, also matters not "peculiarly suited to judicial rather than administrative treatment." *Prop. Portfolio Group*, 154 N.H. at 616-17 (quotation omitted).

Finally, Huard argues that the trial court erred in granting the town's motion for summary judgment, concluding that the town's actions were not an unconstitutional taking of his property. We note that he does not argue that article XIII, section 307-88(D) of the zoning ordinance is facially unconstitutional. He argues only that the town's application of the ordinance to his variance was an unconstitutional taking because he can no longer conduct his transmission repair business. Specifically, he contends that there were genuine issues of material fact and that we must, accordingly, remand the issue to the trial court.

"In reviewing the trial court's initial grant of summary judgment, we consider the affidavits and other evidence, and all inferences properly drawn from them, in the light most favorable to the non-moving party." *Bel Air Assocs. v. N.H. Dep't of Health & Human Servs.*, 158 N.H. 104, 107 (2008) (quotation omitted). "If there is no genuine issue of material fact, and if the moving party is entitled to judgment as a matter of law, the grant of

summary judgment is proper." *Id.* (quotation omitted). An issue of fact is material if it affects the outcome of the litigation under the applicable substantive law. *N.E. Tel. & Tel. Co. v. City of Franklin*, 141 N.H. 449, 452 (1996). We review the trial court's application of the law to the facts *de novo. Bel Air Assocs.*, 158 N.H. at 107.

We first address Huard's claim under the State Constitution, and cite federal opinions for guidance only. *State v. Ball*, 124 N.H. 226, 231, 233 (1983). Under Part I, Article 12 of the New Hampshire Constitution, "[n]o part of a man's property shall be taken from him, or applied to public uses, without his consent." A governmental regulation can be a taking, even if the land is not physically taken, if it is an arbitrary or unreasonable restriction which substantially deprives the owner of the economically viable use of his land. *Burrows v. City of Keene*, 121 N.H. 590, 597-98 (1981); *Smith v. Town of Wolfeboro*, 136 N.H. 337, 346 (1992). "Limitations on use create a taking if they are so restrictive as to be economically impracticable, resulting in a substantial reduction in the value of the property and preventing the private owner from enjoying worthwhile rights or benefits in the property." *Pennichuck Corp. v. City of Nashua*, 152 N.H. 729, 733-34 (2005).

In Huard's objection to the town's motion for summary judgment and his accompanying affidavit, he failed to set forth any facts that would affect the outcome of the litigation under the applicable substantive law. Huard asserted that the garage where he repaired transmissions is "unattractive." He further asserted that the inability to repair transmissions adversely affects the value of the property, but he did not present any evidence indicating to what degree. Without any supporting evidence, he contended that his property "cannot be used for anything," but also conceded that "the house i[s] all right to live in." He further acknowledged that the owner from whom he bought the property operated a business other than transmission repair without objection from the town, indicating that a different type of business use is permissible on his property. In addition, his affidavit alleged that abutters were interested in purchasing his land, a fact which supports its economic viability. *See Claridge v. N.H. Wetlands Bd.*, 125 N.H. 745, 748 (1984) (noting that trial court's findings that land could be sold to abutters supported its conclusion that the property continued to have economic value).

These assertions fail to support a claim that the ZBA's application of the zoning ordinance substantially denied him the economically viable use of his land. Although Huard may not be permitted to use the property precisely as he wishes, he has not demonstrated that a genuine issue of

material fact exists as to whether the value of his property has been substantially destroyed. *See Funtown v. Town of Conway*, 127 N.H. 312, 318 (1982).

Neither the procedural posture nor the facts of this case are like those at issue in *City of Keene v. Burrows*, 121 N.H. 590 (1981). *Burrows* considered the question of whether Keene's designation of the plaintiffs' property as part of a conservation district constituted a taking requiring compensation under the State Constitution. *Burrows*, 121 N.H. at 594, 601. In that case, the plaintiffs purchased 124 acres of woodland for the purpose of subdividing it into lots. *Id.* at 594. The city, seeking to preserve its open spaces, offered to buy the land from the plaintiffs, but at a cost far below their purchase price and its assessed value for tax purposes. *Id.* The parties could not agree to a sale price, and the plaintiffs went forward with their development plans. *Id.* at 595. Subsequently, the city amended its zoning ordinance to include 109 of the plaintiffs' 124 acres in a conservation zone in which development was prohibited. *Id.*

We held that the city's action constituted a taking under Part I, Article 12 of the New Hampshire Constitution. *Id.* at 601. We stated that the right to just compensation for a taking of property necessarily limits the police power and that the government cannot, through regulation, indirectly effect a taking without paying compensation. *Id.* at 596-97. We concluded that "[f]rom the outset, it was plain that the city wished that the plaintiffs' land be devoted to open space," and, instead of paying for this result, obtained it by "prohibit[ing] all normal private development." *Id.* at 600 (quotation omitted).

The expiration of a use variance is not equivalent to the prohibition of all normal private development. The record indicates that although transmission repairs are not permitted on Huard's property, other types of business may be permissible. Even if this is not the case, however, Huard purchased his property for both residential and business purposes, and he acknowledges that his ability to live in the house is unaffected by whether or not the property has a use variance. Further, the record is devoid of evidence regarding appraisals of the property or estimates of how the inability to repair transmissions on it affects its value.

The Federal Constitution offers Huard no greater protection than does the State Constitution under these circumstances. *See Lucas v. South Carolina Coastal Council*, 505 U.S. 1003, 1019 (1992). Therefore, we reach the same result under the Federal Constitution as we do under the State Constitution.

576

To the extent that Huard argues that the conduct of the ZBA violated his right to due process, this argument was not raised in the notice of appeal. Accordingly, we will not address it. *Guyotte v. O'Neill*, 157 N.H. 616, 623 (2008).

*Affirmed.*

BRODERICK, C.J., and DUGGAN, HICKS and CONBOY, JJ., concurred.