Cheshire
No. 2011-183

## NICOLAS BOSONETTO

v.

## TOWN OF RICHMOND

Argued: February 16, 2012
Opinion Issued: June 29, 2012

738

*Bragdon, Dowd & Kossayda, P.C.,* of Keene (*Kelly E. Dowd* on the brief and orally), for the petitioner.

*Tower & Crocker, P.A.,* of Jaffrey (*David M. Tower* on the brief and orally), for the respondent.

CONBOY, J. The petitioner, Nicolas Bosonetto, appeals a decision of the Superior Court (*Arnold,* J.) granting summary judgment in favor of the respondent, Town of Richmond (Town), and dismissing the petitioner's appeal of a decision of the Town of Richmond's Zoning Board of Adjustment (ZBA). We affirm in part and vacate in part.

I

The following facts are drawn from the record. Nicolas and Jill Bosonetto own property located in Richmond at 71 Prospect Hill Road, a private road. There are three mobile homes on the property, all placed pursuant to building permits granted in 1980.

On May 18, 2009, the petitioner submitted a building permit application to the Board of Selectmen of the Town (BOS) requesting permission to replace one of the mobile homes with a new three-bedroom residence at a different location on the property. On June 8, 2009, the BOS denied the application "based on the fact that the property is on a private road and the Town [of Richmond] does not have provisions for building permits on private roads." RSA 674:41, I (2008) prohibits the issuance of a building permit "for the erection of a building unless the street giving access to the lot upon which such building is proposed to be placed" meets certain criteria. With regard to private roads, the statute explicitly provides that permits may be issued only if, among other things, "the local governing body . . . has voted to authorize the issuance of building permits for the erection of buildings on said private road." RSA 674:41, I(d)(1). The statute also sets forth an appeal process to the ZBA, and authorizes the ZBA to "make any reasonable exception and . . . issue a permit . . . if the issuance of the permit or erection of the building would not tend to distort the official map or increase the difficulty of carrying out the master plan upon which it is based, and if the erection of the building or issuance of the permit will not cause hardship to future purchasers or undue financial impact on the municipality." RSA 674:41, II (2008). In its denial, the BOS recommended that the petitioner pursue an appeal to the ZBA.

On June 25, 2009, the petitioner appealed the decision to the ZBA. On July 28, 2009, the ZBA conducted a public hearing, and, on August 5, 2009, the ZBA visited the site of the proposed building. On August 10, 2009, the ZBA deliberated on the matter.

At its deliberation, the ZBA determined that the petitioner has a vested right to use the existing structures because building permits were issued for them. Several of the members noted, however, that that right does not permit the petitioner to replace the existing mobile home with a building on a different "footprint" and at a different location. The ZBA discussed whether the request could be granted pursuant to the factors contained in RSA 674:41, II, and, upon an oral motion, "den[ied] the application based on the criteria of 674:41." Mr. Bosonetto was present at this meeting.

On August 17, 2009, the ZBA convened to review a draft of a "Notice of Decision," which provided the following reasons for the ZBA's decision:

1. The [ZBA] decided that the issuance of the building permit and the construction of the 3-bedroom house would increase the difficulty in carrying out the Master Plan.

2. The [ZBA] decided that the construction of the 3-bedroom house would cause hardship to future purchasers.

3. The [ZBA] decided that the granting of the building permit could cause undue financial impact on the municipality.

4. The [ZBA] decided that the applicant does not have a vested right to replace the existing mobile home with a 3-bedroom house on a "footprint" larger and at a different location than that of the existing mobile home.

(Emphasis omitted.) One ZBA member stated that he "did not feel he had voted on anything to do with vested rights." Another member, however, explained that the ZBA had discussed the issue at length at the August 10, 2009 meeting and that each member was asked what his or her view was on the issue. The ZBA ultimately voted to approve the draft notice of decision without any additional deliberation and without a new vote on the application or any subsidiary matter. The notice was placed on file for public inspection the day after the meeting, on August 18, 2009.

On August 24, 2009, a Town clerk provided Mr. Bosonetto with instructions on how to appeal the decision. Those instructions, on ZBA letterhead, explained that to appeal the decision, the petitioner must first ask the ZBA for a rehearing. The instructions then stated that "[t]he motion must be made within 30 days after the decision is filed and first becomes available

for public inspection." The instructions also contained the following language in bold: "The [ZBA] strongly recommends that, before making any appeal, you become familiar with the zoning ordinance, and also with the New Hampshire Statutes . . . covering planning and zoning."

On September 14, 2009 — more than thirty days after the oral denial of the application, but less than thirty days after the written notice of decision was approved by the ZBA — the petitioner filed a motion for rehearing with the ZBA. At a meeting on October 8, 2009, the ZBA addressed the motion. It noted that RSA 677:2 (2008) (amended 2009) requires that a motion for rehearing be filed within "30 days after any order or decision of the [ZBA]" and that the thirty-day time period "shall be counted in calendar days beginning with the date following the date upon which the [ZBA] voted to approve or disapprove the application." The petitioner argued that he had been misled by the ZBA instructions. The ZBA, however, noted that the instructions specifically refer to the statute, and, by oral motion, the ZBA voted to deny the rehearing request because the motion "was not filed within the 30 day timeframe specified in [RSA 677:2]."

The petitioner then appealed the ZBA decision to the superior court. In addition to asserting a statutory appeal of the ZBA's decision, the petitioner requested a declaratory judgment against the BOS and the ZBA, a writ of mandamus against the BOS, and a writ of certiorari. The court ultimately denied relief on all grounds. On appeal, the petitioner raises various points of error. We address each issue in turn.

█ The petitioner first challenges the trial court's dismissal of his statutory appeal, which was based upon its ruling that his motion for rehearing was untimely. Pursuant to RSA 677:2, "[w]ithin 30 days after any order or decision of the [ZBA] . . . any party to the action or proceedings . . . may apply for a rehearing." "This 30-day time period shall be counted in calendar days beginning with the date following the date upon which the board voted to approve or disapprove the application . . . ." RSA 677:2. Pursuant to RSA 677:3 (2008), "[n]o appeal from any order or decision of the [ZBA] . . . shall be taken unless the appellant shall have made application for rehearing as provided in RSA 677:2." This is a strict requirement: "[A] timely motion for rehearing is a precondition to appealing a ZBA decision to the superior court," and "failure to timely move for a rehearing divests the superior court of subject matter jurisdiction." *Cardinal Dev. Corp. v. Town of Winchester Zoning Bd. of Adjustment*, 157 N.H. 710, 712 (2008).

The petitioner argued to the trial court that his motion for rehearing was timely filed because the thirty-day time period did not begin to run until August 17, 2009, the day the ZBA voted to approve its written notice of

decision. The court noted that RSA 677:2 provides the following: "[I]f the moving party shows that the minutes of the meeting at which such vote was taken, including the written decision, were not filed within 144 hours after the town vote pursuant to RSA 674:3, II, the person applying for the rehearing shall have the right to amend the motion . . . within 30 days after the date on which the written decision was actually filed." The trial court concluded, however, that this provision "merely provides the applicant with the opportunity to amend his [motion]" and "does not change the date when the thirty-day period begins to run in the event that the ZBA fails to file its meeting minutes or written decision in a prompt manner." It thus ruled that "the petitioner's motion for rehearing was not timely" because the date of the decision was August 10, 2009. The trial court accordingly dismissed the petitioner's statutory appeal for lack of subject matter jurisdiction.

■■ On appeal, the petitioner points to the amendment provision and argues that "August 17, 2009 is the triggering date for purposes of RSA 677:2." Like the trial court, we conclude that the statute's amendment provision merely permits a party, in certain circumstances, to amend a timely-filed motion for rehearing. It does not address when a motion must be filed in the first instance. As to that question, the statute is clear: a motion for rehearing may be filed "[w]ithin 30 days after *any* order or decision" and the "30-day time period shall be counted in calendar days beginning with the date following the date upon which the [ZBA] voted to approve or disapprove the application." RSA 677:2 (emphasis added). "Any order or decision" is not limited to a written order or decision, and a "vote to approve or disapprove the application" is not limited to a memorialization of a vote which provides reasoning for the decision. Thus, pursuant to the plain language of RSA 677:2, the thirty-day period began to run the day after the ZBA disapproved the application by a vote on an oral motion on August 10, 2009. Accordingly, to meet the deadline, the petitioner had to file his motion for rehearing within thirty days of August 11, 2009. Because the petitioner filed his motion on September 14, 2009, the trial court correctly ruled that the petitioner's motion for rehearing was untimely.

■ The petitioner next argues that the trial court erred when it ruled that the Town is not equitably estopped from raising the timeliness issue. Assuming that the doctrine of equitable estoppel is applicable to these circumstances, to prevail on his estoppel claim, the petitioner must demonstrate that: (1) a representation or concealment of material fact was made by the Town and the Town had knowledge of that fact; (2) the petitioner was unaware of the truth of the matter; (3) the representation was made with the intention of inducing the petitioner to rely upon it; and (4) the petitioner reasonably relied upon the representation to his detri-

ment. *Cardinal Dev. Corp.*, 157 N.H. at 715-16. Existence of estoppel is a question of fact. *Id.* at 715. The burden of proving estoppel is on the party asserting it. *Id.* We will uphold a trial court's estoppel decision unless it is not supported by the evidence or is legally erroneous. *Id.*

The instructions provided by the ZBA were incorrect. They stated that "[t]he motion [for rehearing] must be made within 30 days after the decision is filed and first becomes available for public inspection." This statement is contrary to the statutory requirements that the motion be made within thirty days after the ZBA's vote "to approve or disapprove the application" and that the thirty-day time period be "counted in calendar days beginning with the date following the date [of the vote]." RSA 677:2.

The trial court ruled that the Town was not estopped from raising the timeliness issue because the court "[could not] conclude that the Town made the misstatement of the law with the intention of inducing the petitioner to rely upon it." The record supports this ruling. The instructions were provided to the petitioner when the petitioner spoke with a Town clerk about requesting a rehearing. There is no evidence indicating that the instructions were specifically created for the petitioner. Most importantly, the instructions, in effect, warn the reader against solely relying upon them: The instructions "strongly" recommend that the reader "become familiar" with the relevant statutes. Thus, the evidence did not compel a finding that the Town made the misstatement to induce the petitioner to rely upon it. Accordingly, we uphold the court's ruling that the petitioner failed to satisfy this element of equitable estoppel.

Aside from this dispositive issue, several other factors militate against application of equitable estoppel here. First, a "party may not assert equitable estoppel to avoid the application of a statute." *Appeal of Alexander*, 163 N.H. 397 (2012) (quotation omitted). That is precisely what the petitioner is attempting here. Second, "[a]lthough municipal corporations may be subject to estoppel, the law does not favor its application against municipalities." *Hounsell v. N. Conway Water Precinct*, 154 N.H. 1, 6 (2006). Third, although we have yet to address the issue, several courts have held that equitable estoppel applies only to misstatements of fact, not misstatements of law. *See, e.g.*, *Elk Park Ranch, Inc. v. Park County*, 935 P.2d 1131, 1138 (Mont. 1997); *Boutwell v. State*, 988 So. 2d 1015, 1028 (Ala. 2007); *Ryan v. Lumbermen's Mutual Casualty Company*, 485 S.W.2d 548, 550-51 (Tenn. 1972). The misstatement here was one of law. Finally, if we were to permit the superior court to apply estoppel here, we would be permitting it to assume subject matter jurisdiction contrary to our prior holdings that "failure to timely move for rehearing divests the superior court of subject matter jurisdiction." *Cardinal Dev. Corp.*, 157 N.H. at 712.

"[Subject matter] jurisdiction cannot be conferred where it does not already exist." *Route 12 Books & Video v. Town of Troy*, 149 N.H. 569, 575 (2003). Accordingly, we conclude that the trial court properly ruled that the Town was not equitably estopped from raising the timeliness issue and thus properly dismissed the petitioner's appeal for failure to timely file a motion for rehearing with the ZBA.

 The petitioner next challenges the court's declaratory judgment rulings. As a general matter, before an administrative board's decision may be reviewed by a court, a party must exhaust its administrative remedies. *See Sutton v. Town of Gilford*, 160 N.H. 43, 52 (2010). A party's failure to timely file a motion for rehearing before the ZBA constitutes a failure to exhaust its administrative remedies. *See Ireland v. Town of Candia*, 151 N.H. 69, 70 (2004). In such a situation, the party will typically not be able to challenge the ZBA's decision in court. *See, e.g., McNamara v. Hersh*, 157 N.H. 72, 73-76 (2008); *Ireland*, 151 N.H. at 70. The exhaustion rule is based on reasonable policies of encouraging the exercise of administrative expertise, preserving agency autonomy, and promoting judicial efficiency. *McNamara*, 157 N.H. at 74.

 This rule, however, is subject to exceptions. A petitioner may maintain a declaratory judgment action — even though he has failed to timely file a motion for rehearing — if the action addresses a zoning issue that is "peculiarly suited to judicial rather than administrative treatment and no other adequate remedy is available." *McNamara*, 157 N.H. at 74 (quotation omitted); *accord Huard v. Town of Pelham*, 159 N.H. 567, 573 (2009); *Blue Jay Realty Trust v. City of Franklin*, 132 N.H. 502, 509 (1989). Judicial treatment is peculiarly suitable when the issue raised is a pure question of law, such as the constitutionality or validity of a zoning ordinance or the authority of an agency to act. *See Collden Corp. v. Town of Wolfeboro*, 159 N.H. 747, 752 (2010); *McNamara*, 157 N.H. at 74. Requiring exhaustion in such a context is unnecessary because "specialized administrative understanding plays little role" in answering legal questions. *McNamara*, 157 N.H. at 74 (quotation omitted). However, where the issue involves substantial questions of fact, a petitioner typically must exhaust administrative remedies and, therefore, cannot pursue a declaratory judgment action when the petitioner has failed to properly file a motion for rehearing before the ZBA. *See Huard*, 159 N.H. at 572-73; *McNamara*, 157 N.H. at 73-76. The rationale for this is straightforward — local zoning authorities are uniquely qualified to answer questions of fact related to matters of local concern and thus should resolve such issues in the first instance. *Huard*, 159 N.H. at 573.

The petitioner argued to the trial court that both the BOS and the ZBA unconstitutionally and illegally applied RSA 674:41 to his use of his property. In light of this, the petitioner asked the court to reverse and remand the case to either the ZBA or the BOS. With regard to the ZBA, the court declined to rule on the merits of the petitioner's claim because the petitioner failed to meet the timeliness requirement discussed above. With regard to the BOS, the court declined to rule on the merits of the petitioner's claim because it was "unclear on what basis it would be proper to remand the matter to the [BOS]."

The petitioner's basic argument is that the ZBA and the BOS applied the wrong legal standard when they determined that the petitioner does not have a vested right to construct the proposed house in the proposed location. The petitioner maintains that he has such a vested right because his proposal is merely a continuation of his prior lawful nonconforming use.

The right to continue a nonconforming use is recognized by the New Hampshire Constitution, N.H. CONST., pt. I, arts. 2, 12, and by New Hampshire statute, RSA 674:19 (2008). *Cohen v. Town of Henniker*, 134 N.H. 425, 427 (1991). "[A] past use of land may create vested rights to a similar future use, so that a town may not unreasonably require the discontinuance of a nonconforming use." *Loundsbury v. City of Keene*, 122 N.H. 1006, 1009 (1982). This right extends to the expansion of a nonconforming use, but "enlargement or expansion may not be substantial and may not render premises or property proportionally less adequate." *New London Land Use Assoc. v. New London Zoning Board*, 130 N.H. 510, 516 (1988). Whether an expansion is "substantial" depends primarily on the factual similarities and differences between the proposed use and the extant nonconforming use. *Id.* at 516-17. Indeed, in this case, the ZBA visited the property at issue and discussed the differences between the existing structure and the proposed structure. Furthermore, the ZBA's ruling on the issue was explicitly premised on its factual finding that the proposed house would be on "a 'footprint' larger and at a different location than that of the existing mobile home." (Emphasis omitted.) Because resolution of the substantial expansion issue involves primarily questions "with respect to the characteristics of [the petitioner's] property," *Huard*, 159 N.H. at 573, it is not "peculiarly suited" to judicial treatment. Thus, the petitioner was required to exhaust his administrative remedies before initiating court action. Because he failed to do so, he cannot now raise the issue in a declaratory judgment proceeding, regardless of whether his challenge is to action by the ZBA or the BOS.

The petitioner also requested a "declaratory judgment that RSA 674:41 violates Part I, Articles 12 and 12-a of the New Hampshire Constitution as

it applies to a lawful pre-existing use." As the trial court put it, the germane question is whether "compliance with RSA 674:41 . . . impinge[s] upon a party's rights to pre-existing structures and non-conforming uses of buildings." Although the trial court addressed the issue and upheld the law, we decline to address the issue in the context of this declaratory judgment proceeding.

 It is a bedrock principle that a declaratory judgment action cannot be based upon a hypothetical set of facts. *Baer v. N.H. Dep't of Educ.*, 160 N.H. 727, 731 (2010). The petitioner challenges RSA 674:41 only as it applies to lawful nonconforming uses. Thus, his argument presumes that his proposed use is, in fact, a continuation of his prior lawful nonconforming use. The record belies this presumption. The ZBA specifically ruled that the petitioner "does not have a vested right to replace the existing mobile home with a 3-bedroom house on a 'footprint' larger and at a different location than that of the existing mobile home." (Emphasis omitted.) As discussed above, the petitioner has forfeited his ability to challenge this ruling. Therefore, the petitioner's constitutional challenge to the statute is based upon a hypothetical premise not supported by the record and thus is not suitable for declaratory judgment. Accordingly, we decline to address the issue and vacate the trial court's ruling on the constitutionality of RSA 674:41.

 The petitioner next argues that the court erred in denying him a writ of mandamus voiding the BOS decision and remanding the matter. A writ of mandamus will not be issued "where the remedy by appeal or error to another administrative board or tribunal has not been exhausted." *State Employees' Ass'n v. Lang*, 119 N.H. 637, 638 (1979) (quotation omitted). Accordingly, we agree with the trial court that "[the petitioner] is not entitled to the remedy of mandamus because . . . he had an adequate avenue for relief, which he forfeited by failing to pursue it in a timely fashion."

 Finally, the petitioner argues that he is entitled to his attorney's fees because the Town acted in bad faith, *see Harkeem v. Adams*, 117 N.H. 687, 690-91 (1977), or, in the alternative, because the litigation conferred a public benefit, *see Asmussen v. Comm'r, N.H. Dep't of Safety*, 145 N.H. 578, 596 (2000). "We give substantial deference to a trial court's decision on attorney's fees, and will not overturn it absent an unsustainable exercise of discretion." *Rabbia v. Rocha*, 162 N.H. 734, 740 (2011) (quotation omitted). Here, the trial court found that the petitioner's bad faith claim was "entirely speculative and unsupported." With regard to his public benefit claim, the trial court specifically noted that many of the petitioner's claims were inadequately developed and were necessitated only by the fact that

"[the petitioner] failed to avail himself timely of the administrative remedy granted to him by statute." The court concluded that the "[p]etitioner cannot hope to persuade [the court] that such use of what are already overstretched judicial resources benefits the public in any way." The record supports both of these conclusions. We therefore hold that the trial court sustainably exercised its discretion in denying attorney's fees.

*Affirmed in part; and vacated in part.*

DALIANIS, C.J., and HICKS and LYNN, JJ., concurred.