# THE STATE OF NEW HAMPSHIRE

# SUPREME COURT

### In Case No. 2019-0240, Sullyville, LLC v. Town of Carroll, the court on April 8, 2021, issued the following order:

Having considered the briefs and oral arguments of the parties, the court concludes that a formal written opinion is unnecessary in this case. See Sup. Ct. R. 18(1). This case arises out of a zoning dispute regarding the proposed expansion of a campground in Carroll by the plaintiff, Sullyville, LLC (Sullyville). The intervenors, Joseph and Lisa Trainor, appeal two orders of the Superior Court (Bornstein, J.) granting summary judgment on their counterclaims for declaratory judgment and injunctive relief in favor of Sullyville. Sullyville cross-appeals the same orders granting summary judgment on its appeal of the Town of Carroll Zoning Board of Adjustment's (ZBA) June 20, 2017 decision and its claim for municipal estoppel in favor of the defendant, the Town of Carroll (Town), and the Trainors. We affirm.

I

Sullyville owns a 45.08-acre parcel of land in Carroll. The northern part of the property is classified as residential (R-1), and the southern part of the property is classified as residential-business (R-B). Sullyville operates the Beech Hill Campground on this property, which has approximately 142 campsites. In 1979, the Town adopted a zoning ordinance that prohibits the operation of commercial campgrounds in R-1 districts, and requires a special exception for the operation of commercial campgrounds in R-B districts. Sullyville contends that its entire property has continuously operated as a commercial campground since before the adoption of the zoning ordinance.

In the mid-1980s, Jeffrey Jones purchased this property from David Burnovsky. Jones then sought approval from the planning board to subdivide the property in 1989. He submitted Plan 375B, which was approved by the planning board and was recorded in the registry of deeds. This plan divided the property into three lots and includes Note 2, which states, "All campsites and roads lying entirely or partially outside the limits of Lot 2 shall be removed." After the land had been subdivided according to this plan, Jones sold Lot 1 and Lot 2 to Edmund Bousquin on May 25, 1990. The deed was recorded and includes a reference to plan 375B.

In July 1990, Jones sought approval from the planning board to modify his subdivision. Under the new Plan 448A, Lot 1, Lot 2, and a small portion of

Lot 3 on the original plan became Lot 1, and the remainder of Lot 3 became Lot 2. The planning board approved Jones' modification, and Plan 448A was recorded. This plan contained a modified Note 2, which said, "All campsites and roads lying entirely or partially outside the Limits of Lot 1 shall be removed." Jones then provided Bousquin a corrective deed that reflected the changes from Plan 375B to Plan 448A, and this deed was recorded. After the modification, Bousquin owned Lot 1 and Jones owned Lot 2. Seven years later, in 1997, Jones sold Lot 2 to Bousquin. Then, on October 3, 2002, Bousquin successfully petitioned the planning board to adopt Plan 1884, which merged Lot 1 and Lot 2 on Plan 448A into a single lot. This plan was recorded.

On March 6, 2006, Jason and Mary Sullivan entered into a purchase and sale agreement with Bousquin to purchase the campground. The agreement states that the property is "SUBJECT TO any matters shown on Plan No. 448A and Plan No. 1884." On April 19, 2006, the property was conveyed to Sullyville, the Sullivans' newly formed company, by warranty deed, which also stated that the property was "SUBJECT TO any matters shown on Plan No. 448A and Plan No. 1884." In 2007, the Trainors purchased the adjacent lot along the western border of the campground. At that time, Sullyville was operating at least 142 campsites.

In 2015, Sullyville sought additional funding to install full water, septic, and electrical connections in the northern part of the property. However, on October 13, 2016, the Town's Code Enforcement Officer informed Sullyville that it must cease any work on its expansion of the campground until it received approval from the planning board. Sullyville submitted a site plan to the planning board on November 8, 2016, proposing thirty new RV sites in the northern part of the campground. On November 23, 2016, the Trainors received an abutters' notice of the public hearing on Sullyville's proposed expansion. On December 1, 2016, the Trainors filed a complaint in the superior court seeking a declaratory judgment that the proposed expansion does not comply with the Town's zoning ordinance, and injunctive relief ordering the cessation of Sullyville's expansion. Sullyville moved for summary judgment on these claims, which was granted on September 27, 2017.

Meanwhile, on March 16, 2017, the planning board determined that Sullyville's proposed site plan would not require a variance or special exception for the additional thirty RV campsites. The Trainors appealed to the ZBA, which, on June 20, 2017, reversed the planning board's decision. The ZBA determined that "the area of the proposed expansion is not a legal, non-conforming use, referencing Plan 448A, formerly Lot 2." Sullyville filed a motion for rehearing, and the ZBA denied this request.

Sullyville filed a complaint in the superior court on October 12, 2017, alleging four counts: (1) an appeal of the ZBA decision pursuant to RSA 667:4; (2) municipal estoppel; (3) unconstitutional taking; and (4) a request for

attorney's fees.  On October 26, 2017, the Trainors filed a motion to intervene, which the court granted with respect to counts one and two.  The Trainors then filed three counterclaims seeking: (1) declaratory judgment that Sullyville was engaged in nonconforming activities that had been abandoned by its predecessors-in-interest; (2) injunctive relief to prevent Sullyville's use of five campsites located outside Lot 1 on Plan 448A and to decrease the number of campsites within Lot 1 from 142 to 71 sites, as originally shown on Plan 448A; and (3) injunctive relief pursuant to RSA 676:15.

The parties cross-filed motions for summary judgment.  On January 4, 2019, the trial court granted the Town and the Trainors' motions for summary judgment as to Sullyville's ZBA appeal and municipal estoppel claim.  The trial court also granted Sullyville's motion for summary judgment on the Trainors' counterclaims regarding Sullyville's proposed expansion of the campground in the northern part of the property and Sullyville's allegedly unlawful intensification of the nonconforming use in Lot 1 on Plan 448A.  Sullyville then filed a second motion for summary judgment on the Trainors' remaining counterclaims related to Sullyville's allegedly unlawful use of five campsites located outside Lot 1 on Plan 448A alleging that the Trainors lacked standing.  The trial court granted this motion on March 29, 2019, but it denied Sullyville's request for attorney's fees.  The trial court has not ruled on Sullyville's unconstitutional taking claim.  The Trainors appealed to this court, and Sullyville cross-appealed.  We now affirm.

II

A

We begin by addressing the trial court's grant of summary judgment on Sullyville's ZBA appeal.  Sullyville argues that the trial court erred in concluding that its nonconforming use of the campground had been abandoned.  In reviewing the trial court's grant of summary judgment, we consider evidence in the light most favorable to the nonmoving party.  Benoit v. Cerasaro, 169 N.H. 10, 14 (2016).  If there is no genuine issue of material fact, and if the moving party is entitled to judgment as a matter of law, we will affirm the grant of summary judgment."  Loeffler v. Bernier, 173 N.H. 180, 183 (2020).  However, if we determine that a genuine dispute of material fact exists, summary judgment cannot stand.  See Bloom v. Casella Constr., 172 N.H. 625, 631 (2019).  "We review the trial court's application of the law to the facts de novo."  Id. at 627.

A nonconforming use is a lawful use existing before the adoption of a zoning ordinance prohibiting such use, and that does not conform to the requirements of the ordinance.  See Dartmouth Corp. of Alpha Delta v. Town of Hanover, 169 N.H. 743, 750 (2017).  RSA 674:19 and Part I, Articles 2 and 12 of the New Hampshire Constitution protect an owner's right to continue a

3

nonconforming use.  See Bosonetto v. Town of Richmond, 163 N.H. 736, 745 (2012); see also N.H. CONST. pt. I, arts. 2, 12; RSA 674:19 (2016).  In prior cases, we recognized that an owner may lose the right to continue a nonconforming use by common law abandonment, Lawlor v. Town of Salem, 116 N.H. 61, 62 (1976), or pursuant to a zoning ordinance that prohibits the continuation of a nonconforming use that had been discontinued for a set period of time.  McKenzie v. Town of Eaton Zoning Bd. of Adjustment, 154 N.H. 773, 777-78 (2007).  However, as with any right, the holder of a nonconforming use may voluntarily waive it.  See, e.g., Maroun v. Deutsche Bank Nat'l Trust Co., 167 N.H. 220, 228 (2014) (holding that statutory homestead right may be waived); Tomasko v. Dubuc, 145 N.H. 169, 176 (2000) (observing that "[c]onstitutional rights can be waived").  Waiver occurs when the holder voluntarily or intentionally relinquishes a known right.  Maroun, 167 N.H. at 227.  When the owner of a nonconforming use voluntarily waives his or her right to continue it, it may not be continued or reestablished.

The ZBA concluded that "[t]he area of the proposed expansion is not a legal non-conforming use, referencing Plan 448A, formerly Lot 2."  Although the ZBA minutes refer to Jones as having "abandoned" the right to continue the nonconforming campground use, the sole reason for its conclusion was Jones' agreement to Note 2 on Plans 375B and 448A.  We interpret the ZBA's decision as finding waiver rather than abandonment of the right to continue the nonconforming use, and we conclude that its decision was correct.

The undisputed facts in this case clearly show that Jones voluntarily waived his right to continue the nonconforming campground use in Lot 2 on Plan 448A when he subdivided the property in 1989.  Jones' agreement to Note 2 on Plans 375B and 448A demonstrates that he willingly relinquished the nonconforming use in order to receive the planning board's approval of his subdivision plan.  See CBDA Dev., LLC v. Town of Thornton, 168 N.H. 715, 722 (2016) (noting planning board has authority to impose conditions upon site plans reasonably related to land use goals); see also New London Land Use Assoc. v. New London Zoning Board, 130 N.H. 510, 517 (1988) (observing that owner of nonconforming use may willingly relinquish it in order to obtain authorization from planning board to make changes on owner's land).  Because Jones waived his right to continue the nonconforming campground use in Lot 2 on Plan 448A, he terminated the right to continue it for himself and for any subsequent purchaser of the property.[1]

---

[1] Jones' waiver of his right to continue the nonconforming campground use in Lot 2 on Plan 448A became effective immediately upon the planning board's approval of his subdivision plan.  It is irrelevant that the campsites were not removed in accordance with Note 2, and that they have been continuously used since before Jones waived his right to continue the nonconforming use.

4

B

We now turn to the trial court's grant of summary judgment against Sullyville on its municipal estoppel claim.  In order for a plaintiff to prevail on a municipal estoppel claim, the plaintiff must show that: (1) the municipality, by the words or conduct of an authorized official, falsely represented or concealed a material fact with knowledge of the fact; (2) the plaintiff was ignorant of the truth of the matter; (3) the representation was made with the intention of inducing the plaintiff to rely upon it; and (4) the plaintiff reasonably relied upon the representation to the plaintiff's detriment.  Thomas v. Town of Hooksett, 153 N.H. 717, 721 (2006); City of Concord v. Tompkins, 124 N.H. 463, 468 (1984); see also Bosonetto, 163 N.H. at 742-43.  Each element of municipal estoppel requires a factual determination.  Sutton v. Town of Gilford, 160 N.H. 43, 58 (2010).

Reliance on a Town representation is unreasonable when the plaintiff, "at the time of his or her reliance or at the time of the representation or concealment, knew or should have known that the conduct or representation was improper, materially incorrect or misleading."  Id. at 59 (quotation omitted).  Incorporated into the concept of reasonable reliance is the requirement that the plaintiff exercise due diligence to learn the truth of a matter relied upon.  See Cadle Co. v. Bourgeois, 149 N.H. 410, 418 (2003).  This due diligence requirement imposes a duty to engage in further reasonably diligent inquiry when there is a reason to do so.  See Healey v. Town of New Durham, 140 N.H. 232, 241 (1995).  "Where there is reason for a party to inquire, neglect to do so is at his peril, and he is in such cases chargeable, constructively, with notice of what he might have learned on examination."  Sawin v. Carr, 114 N.H. 462, 464 (1974) (quotation omitted) (discussing due diligence requirement in context of determining whether party was bona fide purchaser for value).

The trial court determined that Sullyville's reliance on Town representations that its nonconforming campground use had been grandfathered was unreasonable as a matter of law because Sullyville failed to exercise due diligence.  The trial court concluded that Sullyville had actual notice that its property was subject to "any matters shown on Plan No. 448A and Plan No. 1884" because this information was included in its purchase and sale agreement with Bousquin.  (Quotation omitted.)  Moreover, it is undisputed that before purchasing the campground, Sullyville never reviewed Plan 448A, which the trial court concluded, "required in clear and unambiguous language the removal of all campsites and roads outside the limits of Lot 1."  We agree with the trial court that Sullyville's failure to review Plan 448A is dispositive.  Based on the undisputed material facts, if Sullyville's representatives had read Plan 448A, it would have known that campsites were not permitted outside Lot 1 and that any authorized Town representation was

5

"improper, materially incorrect or misleading." Sutton, 160 N.H. at 59 (quotation omitted). Therefore, Sullyville's reliance on any authorized Town representation was unreasonable as a matter of law.

III

Next, we turn to the Trainors' counterclaims. The Trainors requested a declaratory judgment and injunctive relief under the common law and RSA 676:15 (2016).[2] The trial court first granted summary judgment in favor of Sullyville on the Trainors' counterclaims related to Sullyville's proposed expansion and construction in the northern part of the campground because of res judicata, and that ruling was not appealed. Then, the trial court separated the remaining counterclaims into two separate categories as the "request for Sullyville to remove the five campsites depicted outside of Lot 1 on Plan 448A" and the "request for Sullyville to revert back to 71 campsites." The trial court concluded that the Trainors lacked standing to bring the first category of counterclaims relating to Sullyville's use of five campsites located outside Lot 1 on Plan 448A, in which the nonconforming campground use was allegedly unlawful. It also concluded that the statute of limitations barred the Trainors' second category of counterclaims relating to Sullyville's unlawful intensification of its lawful nonconforming use in Lot 1.

We review a party's pleadings de novo. See Petition of Warden (State v. Roberts), 168 N.H. 9, 18 (2015) (observing that we interpret written documents de novo). Based upon the plain language in the Trainors' pleadings, it is readily apparent that they seek three different categories of relief. First, they seek the "cessation of any and all unauthorized construction and development activities" on the property, which the trial court determined had been previously litigated and barred by res judicata. Next, they seek a declaratory judgment that the "use of what was formerly known as Lot 2 on Plan 448A as a commercial campground operation was abandoned during the period from 1990 to 1997," and injunctive relief ordering the removal of those campsites. Finally, they seek a declaratory judgment that the "scope and extent of the lawful, continuous, pre-existing use of the Premises as a campground is as

_____

[2] The Trainors have no basis for bringing their counterclaims under the common law. Zoning regulations are authorized by statute, see generally RSA ch. 674 (2016 & Supp. 2019), and the common law does not recognize a cause of action for their enforcement. Instead, RSA 676:15 creates a cause of action to enforce local zoning regulations. See RSA 676:15 (2016). It provides that local officials and certain private persons may seek injunctive relief and other equitable remedies against a landowner for violating local zoning laws. See id.; cf. Marquay v. Eno, 139 N.H. 708, 713 (1995) ("[W]hether or not the common law recognizes a cause of action, the plaintiff may maintain an action under an applicable statute where the legislature intended violation of that statute to give rise to civil liability."). Therefore, we conclude that there is no common law basis for relief and address the Trainors' counterclaims only under RSA 676:15.

6

defined by Plan 448A, specifically, the sites shown entirely within the area shown as Lot 1 on Plan 448A," and injunctive relief ordering the return to those conditions.

On appeal, the Trainors attempt to characterize this case as merely one of unlawful intensification, but their pleadings demonstrate otherwise. Although the trial court crafted its own vocabulary to characterize the Trainors' counterclaims, we find no error in its distinctions because they correspond with the natural reading of the Trainors' own pleadings. One of their alleged injuries was pleaded under the doctrine of common law abandonment while the other was pleaded under the doctrine of unlawful intensification. Abandonment and unlawful intensification, while related, are separate doctrines that invoke completely different tests. See Lawlor, 116 N.H. at 62; Pike Indus. v. Woodward, 160 N.H. 259, 263 (2010); Town of Hampton v. Brust, 122 N.H. 463, 468-69 (1982). Moreover, the Trainors' arguments in this court reflect this dichotomy. Their arguments recognize that the issue in this case is operating a campground "within an area where the use was lawfully nonconforming, but also in an area in which the use had been specifically prohibited." Because the trial court reasonably identified different legal bases for relief, it was not inappropriate for the trial court to separate the Trainors' counterclaims on that basis.

A

Next we turn to the Trainors' statute of limitations argument. The trial court concluded that the three-year limitations period of RSA 508:4 applied to claims arising under RSA 676:15. RSA 508:4 establishes a three-year limitations period for all personal actions, except slander and libel. RSA 508:4, I (2010). The Trainors contend that RSA 508:4 is inapplicable because actions arising under RSA 676:15 are not "personal actions." Resolution of this question requires that we engage in statutory interpretation. When interpreting a statute, our first step is to examine the language of the statute, and, if possible, construe that language according to its plain and ordinary meaning. Petition of N.H. Div. for Children, Youth & Families, 173 N.H. 613, 616 (2020). We construe all parts of a statute together to effectuate its overall purpose and avoid absurd results. State v. Priceline.com, 172 N.H. 28, 33 (2019). We conclude that the actions brought by the Trainors pursuant to RSA 676:15 are "personal actions" for the purpose of RSA 508:4, and are thus subject to the three-year limitations period.

The Trainors argue that a personal action is an action "brought for the recovery of debts, personal property, or damages arising from any cause," including those brought "for some injury to the person or to relative rights or to personal or real property." (Quotation omitted.) They contend that because RSA 676:15 does not provide for a damages remedy, an action arising under that statute is not personal. We reject this highly formalistic distinction

7

between law and equity to define the meaning of a personal action. Instead, we observe that RSA chapter 508 establishes the limitations periods for three different types of civil actions. RSA chapter 508 recognizes the existence of "real actions," which deal with the recovery of real estate, RSA 508:2 (Supp. 2020), "personal actions," RSA 508:4, and those "civil enforcement actions" that are brought by the State, see RSA 508:4-h (Supp. 2020).

In this context, it is clear that the legislature did not intend to exclude an entire class of actions without a limitations period simply because the only remedy sought is an equitable one. Instead, it is clear that a "personal action" means any action not involving the recovery of real estate. See Webster's Third New International Dictionary 1686 (unabridged ed. 2002) (defining, in relevant part, personal action as any action "not brought for the recovery of or involving rights in lands [or] tenements"). RSA 508:4 leaves no room for distinctions between actions brought for monetary damages and actions brought for equitable relief. Therefore, RSA 676:15 creates a personal action.[3] See RSA 676:15. For these reasons, we conclude that the statute of limitations is applicable to actions arising under RSA 676:15.

1

Next, the Trainors contend that the trial court erred by determining that the continuing wrong doctrine did not toll the statute of limitations for their counterclaims. The continuing wrong doctrine is a common law rule that typically applies in cases of trespass or nuisance. Thorndike v. Thorndike, 154 N.H. 443, 446 (2006). It provides that when a tort is of a continuing nature, although the initial tortious act may have occurred longer than the statutory period before the filing of an action, an action will not be barred if it can be based upon the continuance of that tort within that period. Id. RSA 676:15, however, does not create a common law cause of action in tort; instead, the cause of action is purely statutory. This court has been reluctant to extend the application of the continuing wrong doctrine beyond its traditional scope, even within the sphere of common law torts. See id. at 447 (continuing wrong doctrine did not apply in tort of corporate freeze-out); see also Singer Asset Finance Co. v. Wyner, 156 N.H. 468, 478 (2007) (declining to apply continuing wrong doctrine to tortious interference with contract claim because interference occurred at two discrete points in time). There is simply no authority to support the proposition that the continuing wrong doctrine should apply to a statutory cause of action, and we decline to extend its application now.

---

[3] We also reject the Trainors' argument that prior cases support the conclusion that an action under RSA 676:15 is not a personal action. See Miner v. A&C Tire Co., 146 N.H. 631 (2001); Town of Salem v. Wickson, 146 N.H. 328 (2001); Devaney v. Town of Windham, 132 N.H. 302 (1989). The statute of limitations is an affirmative defense that must be raised by the defendant. Exeter Hospital v. Hall, 137 N.H. 397, 399 (1993). There is no indication that the defendants raised a statute of limitations defense in these cases cited by the Trainors. Accordingly, these cases are not dispositive here, where the statute of limitations is directly at issue.

8

The Trainors attempt to save their argument by describing the alleged zoning violations as "akin to a claim of nuisance." It is significant, however, that the Trainors never pleaded nuisance in the trial court. We will not turn their statutory counterclaim into one of nuisance given their failure to plead it earlier. Therefore, we conclude that the continuing wrong doctrine did not toll the statute of limitations for the Trainors' counterclaims.

2

Finally, the Trainors challenge the trial court's ruling that the discovery rule did not toll the statute of limitations for their counterclaims with respect to Sullyville's allegedly unlawful intensification of the campground use from 71 to 142 campsites in Lot 1 on Plan 448A. RSA 508:4 codifies the common law discovery rule. Balzotti Global Grp., LLC v Shepherds Hill Proponents, LLC, 173 N.H. 314, 320 (2020). This statute provides that a plaintiff must bring a personal action within three years of the act or omission complained of except "when the injury and its causal relationship to the act or omission were not discovered and could not reasonably have been discovered at the time of the act or omission." RSA 508:4, I. In that case, the action must be commenced within three years of "the time the plaintiff discovers, or in the exercise of reasonable diligence should have discovered, the injury and its causal relationship to the act or omission complained of." Id. Once a defendant establishes that the statute of limitations would bar an action, the plaintiff has the burden of raising and proving that the discovery rule is applicable to the action that would otherwise be time-barred. Balzotti, 173 N.H. at 320.

Pursuant to RSA 508:4, the discovery rule will toll the three-year statute of limitation until two prongs are satisfied. Id. at 320. First, a plaintiff must know or reasonably should have known that it has been injured; and second, a plaintiff must know or reasonably should have known that its injury was proximately caused by conduct of the defendant. Id. In order to obtain the benefit of the discovery rule and overcome the statute of limitations, the plaintiff must prove that at least one prong was not yet satisfied at a time within three years of the plaintiff's commencement of the action. Id. The "rule is not intended to toll the statute of limitations until the full extent of the plaintiff's injury has manifested itself"; however, the fact "that the plaintiff could reasonably discern that he suffered some harm caused by the defendant's conduct is sufficient to render the discovery rule inapplicable." Id. (quotations omitted). Moreover, the "plaintiff need not be certain of the causal connection; the possibility that it existed will suffice to obviate the protections of the discovery rule." Id. (quotation omitted).

A defendant may raise a statute of limitations defense in a motion for summary judgment. See Fothergill v. Seabreeze Condos., 141 N.H. 115, 116 (1996). "Whether the plaintiff exercised reasonable diligence in discovering the

9

causal connection between the injury and the defendant's alleged act or omission is a question of fact." Balzotti, 173 N.H. at 321 (quotation omitted). If there is a factual dispute regarding the application of the discovery rule, summary judgment cannot be granted. See Big League Entm't. v. Brox Indus., 149 N.H. 480, 484-85 (2003). However, if there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law, we will affirm the trial court's grant of summary judgment. Loeffler, 173 N.H. at 183. We agree with the trial court that there is no dispute of material fact relating to Sullyville's allegedly unlawful intensification of its lawful nonconforming use in Lot 1 on Plan 448A, and we affirm. The undisputed facts demonstrate that the Trainors were aware of Sullyville's campground operation at the time they purchased the property.

The Trainors argue that the discovery rule tolled the statute of limitations until 2016 when they learned that Sullyville's conduct allegedly constituted a zoning violation. We disagree. The trial court found, and the Trainors do not contest on appeal, that 142 campsites existed in 2007, before they purchased the adjacent property, and that sixteen of those campsites directly bordered the Trainors' lot. Moreover, the undisputed facts reveal that the Trainors were aware of Sullyville's campground operations at the time they purchased their property. The Trainors further alleged that they could see a "parking lot of RVs" and that the noise, smoke, and commotion caused by the campers are within their plain view. These undisputed facts demonstrate that the Trainors were aware of the conditions on Sullyville's campground that contributed directly to their alleged injury at the time they purchased their property.

Accordingly, the discovery rule does not apply because the Trainors were aware of their alleged injuries and reasonably should have been aware that their injuries were caused by Sullyville's operations before the three-year statute of limitations expired. Balzotti, 173 N.H. at 322. The discovery rule does not toll the statute of limitations until a plaintiff discerns the legal theory by which his or her case will proceed; rather, it tolls the statute of limitations only when the injury and its causal relationship to the defendant's act or omission remain unknown to the plaintiff. Because the Trainors were aware of Sullyville's allegedly injurious conduct at the time they purchased their property, the Trainors should have brought this action within three years of that date. See id. at 323.

For these reasons, we conclude that RSA 508:4 is applicable to the Trainors' counterclaims and that the statute of limitations has barred the Trainors' counterclaims relating to Sullyville's allegedly unlawful intensification of its nonconforming campground use in Lot 1 on Plan 448A.

10

Now we turn to the Trainors' standing argument. The Trainors contend that the trial court erred by concluding that they lacked standing to bring their counterclaims relating to the five campsites located outside Lot 1 on Plan 448A.

When the relevant facts are not in dispute, we review de novo the trial court's determination on standing. State v. Actavis Pharma, 170 N.H. 211, 214 (2017). "In evaluating whether a party has standing to sue, we focus on whether the party suffered a legal injury against which the law was designed to protect." Id. (quotation omitted). RSA 676:15 permits abutters to sue a private defendant for violating a zoning ordinance only if the plaintiff is "specially damaged" by the alleged zoning violation.[4] RSA 676:15; see also Barton v. H.D. Riders Motorcycle Club, 131 N.H. 60, 62 (1988). "This requirement mirrors the familiar burden to plead and prove special damages as a prerequisite to equitable relief, when sought by a private party to remedy what would otherwise be treated solely as a public nuisance." Barton, 131 N.H. at 62. "The statute in question here employs the concept of special damage to identify those private landowners who may seek relief from actual or threatened infractions of a municipal ordinance that would otherwise be subject to enforcement under State law only by municipal officers . . . ." Id.

The trial court concluded that the Trainors lacked standing to bring their counterclaims relating to the five campsites because they failed to allege sufficient facts demonstrating that they have been specially damaged by the existence of those campsites. For instance, the court observed that the Trainors' pleading under RSA 676:15 "makes the bare, non-specific assertion that the 'unlawful expansion . . . has caused special damages to the Trainors,' but likewise includes no assertion that the five campsites have caused them 'special damages' and no assertions of predicate facts as to how the five campsites have done so." The court also determined that the Trainors' counter affidavit in response to Sullyville's motion for summary judgment contained the same defects. It simply made the "bare assertion that the five campsites have caused or will cause the Trainors special damage" that was "unsupported by any assertions of specific predicate facts." We agree with the trial court that the Trainors have failed to allege facts showing that they have been specially damaged by the existence of the five campsites.

The Trainors argue that abutter status alone is sufficient to confer standing under RSA 676:15. In order to resolve this issue, we must interpret

---

[4] This rule accords with the standing requirements under the New Hampshire Constitution, which requires parties to have personal legal or equitable rights that are adverse to one another, with regard to an actual, not hypothetical, dispute, which is capable of judicial redress. State v. Actavis Pharma, 170 N.H. 211, 214 (2017).

the statute. In matters of statutory interpretation, we are the final arbiter of the legislature's intent as expressed in the words of a statute considered as a whole. Trefethen v. Town of Derry, 164 N.H. 754, 755 (2013). Our first step is to examine the language of the statute, and, if possible, construe that language according to its plain and ordinary meaning. See id. We interpret legislative intent from the statute as written and will not consider what the legislature might have said or add language that the legislature did not see fit to include. Id.

The Trainors cite numerous provisions of RSA chapter 676 that grant special rights to abutters. See, e.g., RSA 676:4, I(d)-(e) (Supp. 2020) (granting abutters notice of applications and hearings before planning board and opportunity to testify); RSA 676:7 (Supp. 2020) (giving abutter notice of and opportunity to testify before ZBA). In contrast to those statutes, however, RSA 676:15 creates a cause of action for "the owner of any adjacent or neighboring property who would be specially damaged" by an alleged zoning violation on the defendant's property. RSA 676:15 (emphasis added). The phrase "who would be specially damaged" modifies "the owner of any adjacent or neighboring property." The legislature would not have included this modifying phrase if it intended to create a cause of action for all abutters solely on account of their abutter status. The Trainors' statutory argument ignores not only the plain and unambiguous language of the statute, but also the basic rule of statutory construction that "all of the words of a statute must be given effect and that the legislature is presumed not to have used superfluous or redundant words." Pennelli v. Town of Pelham, 148 N.H. 365, 367-68 (2002) (quotation omitted).

The Trainors also argue that our decision in Barton supports a less rigid application of the standing rule. We disagree. In Barton, we recognized that a showing of special damages was "a statutory condition of a property owner's standing to seek injunctions or abatements of orders to cure a zoning violation." Barton, 131 N.H. at 62. There, we determined that the plaintiffs were specially damaged because there was evidence of "an allegedly illegal recreational development" on the defendant's property that "would attract" as many as fifty motorcyclists at a time, and the plaintiff's land was "located on the dead-end road that the cyclists would travel to reach the recreational area." Id. This case is distinguishable for several reasons. The five campsites sit approximately 1000 feet east of the Trainors' shared boundary line, and they are separated from the Trainors' property by trees, structures, and more than 100 campsites that Sullyville has operated since at least 2006. Significantly, the Trainors never distinguished in either their pleading or their counter affidavit that these five campsites directly caused their alleged injuries independent of the other lawful campground activities.

The Trainors have failed to plead any fact that demonstrates special damages beyond the assertion that the existence of these campsites contributes to their general grievances against the whole campground. For

these reasons, we conclude that the Trainors lacked standing to challenge the existence of the five campsites located outside Lot 1 on Plan 448A.

IV

Sullyville also argues that the trial court erred by failing to award attorney's fees because the Town's arguments and the Trainors' counterclaims were made in bad faith. "We will not overturn the trial court's decision concerning attorney's fees absent an unsustainable exercise of discretion." DiMinico v. Centennial Estates Coop., Inc., 173 N.H. 150, 161 (2020). "To warrant reversal, the discretion must have been exercised for reasons clearly untenable or to an extent clearly unreasonable to the prejudice of the objecting party." Id. "In evaluating the trial court's ruling on this issue, we acknowledge the tremendous deference given a trial court's decision regarding attorney's fees." Id. "If there is some support in the record for the trial court's determination, we will uphold it." Id. Here, the trial court concluded that this case was a "close call" but ultimately "decline[d] to award Sullyville its costs and attorney's fees at this time." Nothing in the record demonstrates that the trial court was "clearly unreasonable" in exercising its discretion not to award attorney's fees. Id. Therefore, the trial court's denial of attorney's fees is affirmed.

V

For the foregoing reasons we affirm the trial court's grant of summary judgment on Sullyville's ZBA appeal, municipal estoppel claim, and the Trainors' counterclaims. We also affirm the trial court's denial of attorney's fees for Sullyville.

Affirmed.

HICKS and DONOVAN, JJ., concurred; TUCKER, J., superior court justice, and ABRAMSON and BROWN, JJ., retired superior court justices, all specially assigned under RSA 490:3, concurred.

**Timothy A. Gudas,
Clerk**

13